McDade *vs.* Burch.

of the signing the bill of exceptions, and the certificate of the Clerk to the transcript of the record.

STEPHENS, for the motion.

JOHNSTON, contra.

No. 92.—AMANDA McDADE, administratrix of JOHN McDADE, plaintiff in error, *vs.* JOSEPH BURCH, administrator of CHARLES McDADE, defendant in error.

[1.] An order of the Court of Ordinary, directing the sale of the lands belonging to an estate, is a judgment of a Court of competent jurisdiction, and cannot be attacked and impeached collaterally, by an heir claiming such lands.   Hence, when property is claimed at administrator's sale, advertised and offered under such order, it is not competent for the claimant to prove that the estate was settled and the land divided, without an administration, and that there were no debts to be paid.

Claim, in Richmond Superior Court.   Motion to re-instate. Decided by Judge MERRIWETHER, June Term, 1849.

Upon the death of Charles McDade, his children and heirs at law, by consent, dispensed with an administration of his estate and divided the property among themselves.   Upon that division

McDade *vs.* Burch.

a tract of land was allotted to John McDade, who went into possession and claimed the same for many years, until his death. John Burch afterwards took out letters of administration on the estate of Charles McDade, and obtained an order from the Inferior Court of Richmond County, sitting for ordinary purposes, for the sale of this tract of land.

Amanda McDade, administratrix of John McDade, interposed her claim to the land.

On the trial of this claim, the claimant offered testimony to prove the above stated facts, and farther, that there were no debts due by Charles McDade, at his death. The Court rejected the testimony and dismissed the claim. On a motion to re-instate, the Court refused to grant the order, on the grounds :

1st. That the judgment of the Court of Ordinary, ordering the sale of the premises in dispute, by the administrator of Charles McDade, is conclusive upon the issue to which the testimony rejected was sought to be applied; and cannot be attacked in this indirect manner.

2d. That no title can be acquired in Georgia to a decedent's estate, but through the forms of an administration, and heirs cannot hold real estate against the rightful administrator.

This decision is assigned as error.

Cone, for plaintiff in error.

A. J. Miller, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] This Court has held that the title to the lands of the ancestor is, at his death, cast upon the heirs, and that they may maintain ejectment for them, against a wrong doer; and at the same time and in the same case, that they are liable to be sold by the administrator, after an order by the Court of Ordinary granting him leave to sell for the payment of debts; and that he may bring ejectment for them, even against the heir, when it is necessary to gain possession for the purposes of the administration. The title of the heirs is subordinate to the rights of the administrator, for these purposes. By our Statute, lands are upon the same footing with personalty, as to distribution; they are liable,

McDade *vs.* Burch.

as personalty, to pay debts. In England, they descend to the heir, and are only liable for debts, upon deficiency of the personal estate; formerly, only to a certain class of debts; now, by Statute 3 and 4, *W. & M.* they are assets to pay debts by simple contract, as well as by specialty, and the heir is subject to suit for the same in Equity, creditors by specialty having preference. 2 *Williams on Executors*, 1204, '5. Under our laws, the relation which the administrator bears to the real estate, is that of agent or trustee, for the purpose of protecting the rights of creditors and distributees. He is *virtute officii*, clothed with powers necessary to execute his trust. By the Common Law, the title to lands is cast upon the heir—so here, upon the heirs—the Statute not repealing the Common Law, but *sub modo*, holding that title subject to the necessities of the administration. If, then, there is a contest between the heirs and a stranger, the administration is out of view, and the heirs may succeed against him upon their title. But if there is a contest between the administrator and the heirs, and it is legally manifested that there is a necessity growing out of his relation to the estate, as administrator, that he should control the possession of the lands, he will prevail against the heirs. It is not necessary for me to inquire how far it is competent for the heirs to go into Chancery, and deny and disprove this necessity, and thus hold against the claim of the administrator. Doubtless there are cases where this can be done; perhaps this case is one, if the facts proposed to be proven are true.* I have very little doubt but that an administration and settlement of the estate may be presumed from lapse of time. The Supreme Court of Massachusetts refused to protect the title of a purchaser, at the sale of real estate by an administrator, under an order to sell, because, by lapse of time, the creditors of the estate were barred before the administrator applied for the order. 16 *Mass. R.* 171. I do not sanction this decision, but it was made by a Court of high authority. If it be true that an estate has been long settled—the debts paid, and the lands, by agreement, divided among the distributees, and perhaps passed into other hands, innocently and for value, Chancery ought to afford relief. If it cannot, then, in the name of an administration, the most enormous iniquities may be perpetrated—have been perpetrated—

---

*See *Jonekin vs. Holland*, No. 98.—[Rep.]

and that too in our own State. Taking into view the Common Law doctrine, that the title to real estate is cast upon the heir; and also into view the peculiar relation which the administrator, under our Statute, bears to the realty, I conclude that the decisions of this Court, heretofore made under very serious sanctions, are right; they give proper effect to the Statute and the Common Law, and harmonize both. See 3 *Kelly*, 108.

This was a claim interposed by an heir, to lands in his possession, advertised to be sold by an administrator, under a judgment of leave to sell, rendered by the Court of Ordinary. The claimant proposed to prove that there were no debts to be paid; that the lands of the ancestor were divided by consent; that the land advertised for sale had fallen, in the division, to the claimant, and that he had been a long time in possession. The Court refused to admit the evidence, and we think correctly. Our proceedings under our Claim Laws, are *sui generis*, but they are proceedings in a Court of Law. This is a contest between the administrator and one of the heirs; the former asserting his right to sell, in his trust character, for the purposes of administration; the latter denying any necessity for such sale. The administrator produces an order of the Court of Ordinary directing the sale. Whatever may be the rule in Chancery, in just such a case, the rule here is, that the order to sell, being a judgment of a Court of competent jurisdiction, imports, legally, a necessity for the sale, and that that judgment cannot be attacked and set aside, collaterally, by proof, that the Ordinary improperly exercised its powers. By the Act of 1826, the Court of Ordinary are authorized to order the sale of any part, or the whole of the real estate of an intestate, upon the application of an administrator, "Where it is made fully and plainly to appear that the same will be for the benefit of the heirs and creditors of said estate." *Prince*, 248. Jurisdiction over the subject-matter is here expressly conferred. The exercise of that jurisdiction, in any case, is therefore the judgment of a Court of competent jurisdiction.

It is not only *leave to sell*, but it is a *judgment* of the Court, that such sale will be for the benefit of the heirs and creditors of the estate; because the judgment, by the Statute, cannot be granted until it is made fully and plainly to appear that such sale will be for the benefit of the heirs and creditors. In favor of this judgment, we are to presume that the Court did its duty; that

notice of the application was given as the Statute directs, and that it plainly and fully was made to appear that the sale would be for the benefit of the heirs and creditors ;. not only heirs, but *creditors ;* that is, we are to presume that it was made to appear that there were creditors of the estate and debts unpaid.    It was competent for the claimant to resist, before the Ordinary, the granting of this order; from aught that appears to this Court, he did resist it.    The notice of the application which the Statute requires, is for the benefit of all parties in interest, himself included —he cannot say that he was not warned.

Now, the general rule, as to judgments, is, that they are binding upon parties and privies, and cannot be impeached by them collaterally.    See 1 *Kelly*, 136.    2 *Ib.* 275.    *Ib.* 329.    And although the claimant was not brought into Court, and made a party by personal service, yet he had notice by implication, and was at liberty to have become a party.    The presumption of the law is, that he had his day in Court, and was heard against the judgment; if it can be set aside, it must be by application to the Court that rendered it, or by application to a Court of Chancery, upon such grounds as may be cognizable in that Court.    A similar question has been determined by this Court.    Stell, a guardian, applied for and procured an order of the Court of Ordinary, authorizing him, (under the Act of 1829, which authorizes a guardian to invest a portion of his ward's money in land, if it is thought expedient so to do,) to purchase a certain tract of land, upon certain terms.    He made the purchase, and was afterwards dismissed from the guardianship.    The ward and her husband, after marriage, filed a bill against him and the vendor of the land, alleging, among other things, the procurement of the aforesaid order by fraud, and prayed a settlement, &c.    Upon the final trial, the presiding Judge instructed the Jury, " That the state of things contemplated by the Act of 1829, did not exist, · and that the defendant neither had the right to apply for, nor the Court to grant the order ; and that while nothing wrong might have been intended, it was a legal fraud upon the rights of the ward, and should be set aside."    Exception was taken to this charge, and this Court ruled that " The Law constituted the Court of Ordinary, and not the Judge of the Superior Court, the arbiter, as to whether or not, in March, 1840, a state of circumstances existed, which made it proper for the Court of Ordinary

to pass the order of that date. The Act of 1829 allows the guardian to invest a portion of his ward's funds in land, if it is expedient to do so; and whether it be expedient or not is an inquiry exclusively submitted to the Inferior Court, sitting as a Court of Ordinary, unless contested by an appeal. The order on the minutes shows that they acted in the premises; and having jurisdiction over the subject-matter and the persons before them, their judgment cannot be impeached and invalidated in this manner. And the legal presumption is, that that Court had sufficient evidence to warrant it in passing the order. It may have acted unadvisedly—probably did—if the pecuniary interest of the ward alone is considered. It is wholly immaterial. The order being passed by a Court of competent jurisdiction, and acting within the sphere of its authority, its proceedings cannot be attacked and set aside in this indirect manner." *Stell, Guardian, vs. Glass,* 1 *Kelly,* 486. This authority covers all the principles involved in this case. See 7 *Mass. R.* 292. 11 *Ib.* 226. 6 *Cow.* 494. 1 *Pick.* 435. 6 *Ib.* 223. 10 *Ib.* 470. 4 *Day's R.* 432. 3 *Johns. R.* 17. 19 *Ib.* 39. 1 *Peters;* 74. 7 *Cranch,* 483. 2 *N. & McCord,* 410. 6 *S. & R.* 57. 4 *Gill & Johns.* 1. 1 *Dev. & Bat. Eq. R.* 437.

Let the judgment of the Court below be affirmed.