No. 40.—WILEY ROGERS, plaintiff in error, *vs.* BENJAMIN KING,
defendant.

[1.] When the evidence is contradictory and irreconcileable, it is the duty of
the Jury to look to a l the facts and circumstances of the case, the character
of the witnesses, their opportunities for knowing, their relationship to the
parties, the apparent bias under which they testify, and thus determine
on which side the credibility preponderates, and render their verdict ac-
cordingly.

Assumpsit, in Pike Superior Court. Tried before Judge
STARK. May Term, 1852.

This action was brought by King *vs.* Rogers, on a note dated
February 7, 1838, and due the 25th of December, thereafter.
It was credited by eight dollars thirty-seven and half cents, Feb-
ruary, 1846. The action was brought in 1851. The defend-
ant relied on the Statute of Limitations. For the plaintiff the
testimony of Cary King was read as follows:

Witness is the son of plaintiff. A short time before the date
of the credit on the note, witness, by consent of his father, went
to defendant, who was a tailor by trade, and asked if he would
make a coat for him and have the price credited on the note,
which he showed to defendant at the time. Defendant took the
note, looked at it, and said he would; and also said he would
make one for witness' father in the same way. After a few
days, witness went for the coat; defendant was not at home, but

a young man in the shop delivered the coat, and (remarking that he understood the transaction,) took the note and entered the credit on it.

Defendant introduced J. W. Spence, who testified that he was working in the shop of defendant ; was present when young King came to to ask if Rogers would make him a coat on the terms above mentioned ; that defendant refused to do so ; that he knows not who made the credit on the note, but that the coat spoken of was charged on the books to Mr. King, Sr.

The testimony of these two witnesses constitutes the evidence in the cause.

The Court charged the Jury, that the only question was, whether the payment credited on the note, was really made by defendant, or one authorized by him. That it was their duty to reconcile the testimony, if possible. If it could not be reconciled, they must weigh it, and decide according to their convictions of the truth.

The Jury found for the plaintiff; whereupon, defendant's counsel moved a new trial, on the ground that the verdict was contrary to evidence and the charge of the Court. The motion, on hearing, was overruled by the Court; to which decision, as well as to the charge to the Jury, defendant's counsel excepted.

A. R. MOORE, for plaintiff in error.

ALFORD & MOORE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] This was an action of assumpsit, brought by Benjamin King, against Wiley Rogers, on a note for $177.48, and payable the 25th day of December next, thereafter. There is a credit indorsed on the note, of $8 37½, dated February the 17th, 1846. The Statute of Limitations was pleaded to the action, and the question was entirely as to the *bona fides* of the payment.

Rogers *vs.* King.

It is admitted by the defendant's counsel, that if this credit was placed upon the note by the maker, or his authority, the plea cannot be sustained, and that the finding of the Jury was right.

There were but two witnesses sworn in the case, and the testimony of both were taken by interrogatories.

Carey King, the son of the plaintiff, testified that, desiring to have a coat made, he took the note at the request of his father, and called upon Rogers, who was a tailor, to know whether he was willing to make the coat and allow the price to be credited upon the note, at the same time presenting the paper to Mr. Rogers, who, after examining it, replied "*certainly*;" and the price agreed upon, was $8.00.    The defendant remarked at the same time, that he had his father's measures, and that he would make up a suit for him and send it; intending, as it would seem, to convey the idea that the price of the suit should go the same way, viz : as payment upon the note.

Young King called, some short time afterwards, with the note, to get the coat, but found Rogers absent.    Upon stating his business, a young man on the board in the shop, with whom he was not acquainted, and whose name he did not know, stated " that he understood all about it," and taking the note, credited it with $8.37½, remarking that the 37½ was on account of some trimmings which had been furnished.    And here the transaction relative to this credit terminated.

To rebut this evidence, James W. Spence was sworn by the defendant, who testified that he was present when young King called the first time with the note ; heard all the conversation which passed between him and Rogers; and that so far from the defendant's promising that the price of the coat should be put as a credit upon the note, he absolutely refused the application of young King, that it might be done.

Again, he states, that he was present when the garment was delivered ; that it was charged upon the shop books to Benjamin King, the father, the son being a minor, and that nothing was said at the time about the note or the credit.    Witness admits that there was another young man, William Claridon, working

with him, for Mr. Rogers, at the time this matter transpired, but does not know whether the credit on the note is in his hand writing or not.

The testimony being closed, the Court charged the Jury, " that there was a conflict of testimony ; that they must reconcile it if they could ; if irreconcileable, that then it was their duty to weigh all the facts and circumstances, and ascertain, according to the truth of the case, whether the partial payment was actually made or not; that the question of payment was one purely of fact, which they were to decide." The Court further instructed them, that they must be satisfied that " the evidence proves that a payment was actually made by the defendant, or some one by him authorized to make it." He further charged, that " if the payment was made, it relieved the suit from the Statutory bar, and was evidence on which the law raised an implied promise to pay the balance of the debt, and that this (viz: the effect of the payment,) was a question of law for the Court to decide; if a partial payment was made on the note, find for the plaintiff; if not, for the defendant."

The Jury returned a verdict for the plaintiff.

Application was then made for a new trial, on the following grounds, to wit:

1. Because the payment relied on to take the case out of the Statute of Limitations, was not proved to have been made by the defendant, either personally or by an authorized agent.

2dly. Because the credit was placed upon the note, when no payment was in fact made ; and not only without the privity or consent of the defendant, but against his positive refusal to allow it to be done.

3dly. Because, verdict of the Jury was contrary to the evidence, the weight of evidence, and without evidence.

.4thly. Because the Jury found, contrary to the charge of the Court.

The motion for a new trial was refused, and thereupon, counsel for the defendant excepted.

And on assigning error on this last decision in the bill of exceptions, it is alleged that " the Court erred in charging the Jury,

Rogers *vs.* King.

that if the evidence was irreconcileable, it was their duty to weigh the facts, and find whether the partial payment on the note was made or not."

It will be noticed, that there was no exceptions taken to the charge, at the time it was given.   On the contrary, it seems to have been satisfactory ; for one of the grounds occupied in the motion for a new trial is, that the  verdict of the  Jury *was contrary to the charge of the Court.*

But waiving this irregularity, what are the two points made upon the record for our determination ?   *First,* error in the charge of the Court, and *secondly,* that the verdict was contrary to evidence.

1.  The charge, as a *whole,* is not objected to.   It is, *wholly,* unobjectionably.   And as to  the  specification, namely : that the Jury were instructed to reconcile the testimony if they could, and if they could not, to look at all the facts and circumstances of the case, in order to arrive at a correct conclusion, as to whether or not the payment was actually made ; what is there wrong in it ?   In case the  testimony is contradictory, the verdict must then turn upon the credit of the witnesses.   And it would require an extraordinary case, to induce us to grant a new trial, under such circumstances.

2.  As to the verdict being contrary to evidence, we had supposed that this ground has been presented in every conceivable aspect in past cases.   We had often been urged to remand a cause, because the verdict was against the weight of evidence. And our uniform ruling had been, even before the Act of 1849 was passed, in which the Legislature seems to have embodied all its strength, to protect Juries in the unmolested exercise of their rights and privileges, that if there was any evidence to justify the verdict, we would not disturb it.   But here the point comes up in a new form, namely, that the evidence is equally balanced, and that *therefore,* the Jury could not find for either party.

But this  assumption is wholly unwarrantable ; and it is expressly negatived by the verdict which has been rendered. And notwithstanding the witnesses contradict each other, the

VOL. XII  30

Jury have chosen to credit the one rather than the other. And it was their right to do so.

Perhaps they reasoned in this way The plaintiff and his son reside in Forsyth, Monroe County. Why should they have gone to a tailor in Griffin to get a garment made, if it were not for the purpose of obtaining some recognition of this debt? And if, as Mr. Spence swears, Rogers rejected the proposition to permit the price of the coat to go as a credit on the note, why did young King persevere in having it made there? And why did he take the note back with him to Griffin, when he went to get the coat?

Again, the Jury may have disbelieved the defendant's witness, in denying that he knew Clarida's hand-writing, who he admits was a workman in the shop with him. Young King swears that the credit was entered on the note by a workman in the shop. Spence swears that he and Clarida were in the shop at the time, and that he did not enter the credit. Clarida then undoubedly did. And if so, it was Clarida, and not Spence, that delivered the coat. Rogers himself thought that Spence would prove that the credit was in the hand-writing of Clarida, as is clearly to be inferred from the 2d and 3d questions propounded to him, in the interrogatories. The second question is, " please look on the note hereto attached and the receipt thereon endorsed, and state whether or not the receipt is in *your* hand-writing; and if it be not in your hand-writing, state to the best of your knowledge, whose it is? 3d. Were you and the person whose hand-writing *you have stated the receipt is*, doing business or employed in the same house together, and who was the person or proprietor by whom you were employed, at or about the time of the date of the receipt? Do you know for what the receipt was given? If for an account, when was that account made and charged on the books of Wiley Rogers?"

Not only did Rogers suppose that Spence knew that the credit was in the hand-writing of Clarida, but it is to be inferred also, that Rogers himself knew the fact to be so.

And yet Spence knows nothing that will corroborate the testimony of young King, but is full and fresh in his recollection of

every conversation, interview, and transaction that will benefit the defendant.

Thus the Jury may have concluded to have believed King rather than Spence, and consequently to find for the plaintiff. While it is true therefore, that the testimony was contradictory and irreconcileable, still no rule of law was violated by the Court or the Jury. That there was abundant evidence to sustain the verdict, is not denied. And who will venture to assert that it is clearly against evidence ? or even the weight of evidence ? Upon what principle then, can it be set aside ? The Circuit Judge was satisfied with the verdict. We see no abuse of his discretion in refusing a new trial.

Judgment affirmed.