RANSOME BARNES *et al.*, plaintiffs in error, *vs.* ABNER F. UNDERWOOD, administrator, defendant in error.

1. The orders of the courts of ordinary of this state, in matters connected with wills and the administration of estates, are judgments of courts of general jurisdiction, and the necessary jurisdictional facts need not appear on the face of their proceedings.
2. The admissibility of letters of administration presents a question for the court with which the jury has nothing to do.

3. Where suit was commenced in one county for a tract of land, a part of which lay in another county, prior to the adoption of the constitution of 1868, but the trial was not had until subsequent thereto, a recovery may be had for the entire tract.

Ejectment. Courts of ordinary. Judgments. Jurisdiction. Evidence. Land. Venue. Before Judge McCUTCHEN. Gordon Superior Court. February Term, 1874.

For the facts of this case, see the decision.

ALEXANDER & WRIGHT, for plaintiffs in error.

W. H. DABNEY, for defendant.

WARNER, Chief Justice.

This was an action of ejectment brought in the common law form, in favor of John Doe, *ex dem.*, A. F. Underwood, as the administrator of Ransome Barnes, deceased, against the defendants to recover two lots of land alleged to be located in Gordon county. The declaration was filed in the clerk's office of the superior court of Gordon county, on the 17th day of March, 1868, and the defendants pleaded the general issue and statute of limitations. Upon the trial of the case, in 1874, the plaintiff introduced the following evidence:

1st. A deed from E. W. Holland, as guardian, to Ransome Barnes, the testator, for lot number one hundred and thirty-two, twenty-fourth district and third section, dated November 22d, 1838. This being one of the lots in dispute.

2d. A deed from Thomas Watson and M. D. Rogers to Ransome Barnes, the testator, for lot number one hundred and forty-nine, twenty-fourth district and third section, dated December 3d, 1838. This being the other lot in dispute.

3d. Letters of administration, with the will annexed, of Ransome Barnes, the testator, granted by the ordinary of Hall county, Georgia, to A. F. Underwood, accompanied with an exemplication from the records of the court of ordinary of that county, containing—

1st. A copy of Ransome Barnes' will, executed on the 28th

Barnes *et al. vs.* Underwood.

day of January, 1864, in which Thomas Barnes alone was appointed executor.

2d. Probate of the will in common form before the ordinary on the 5th of September, 1864.

3d. The qualification of Thomas Barnes, as executor, and an order admitting the will to record, September 5th, 1864.

4th. Letters testamentary, granted by the ordinary to Thomas Barnes, September 5th, 1864.

5th. An order from said court, September term, 1864, granting to Thomas Barnes, executor, leave to sell all the real estate of the testator.

6th. A petition from Clemeth Cavendar, as guardian of *some of the heirs-at-law of the estate,* charging waste and mismanagement against the executor, and asking for a rule requiring him to show cause, at the December term of the court of ordinary, why he should not give security for the faithful execution of his trust.

7th. An order, granted November term, 1866, in pursuance of the petition requiring the executor to show cause at the next term why he should not give security or have his letters revoked.

8th. A notice published by Thomas Barnes, of which the following is a copy :

" All persons concerned are hereby notified that I shall apply to the honorable court of ordinary of Hall county, at the January term next of said court, for leave to resign the trust reposed in me, as executor of the last will and testament of Ransome Barnes, late of said county, deceased.    November 6th, 1866.                    THOMAS BARNES."

9th. An order of the court of ordinary of Hall county, of which the following is a copy:

" GEORGIA—HALL COUNTY :

" *Court of Ordinary.    January Term, 1867.*

"A rule *nisi* having been issued at the November term last of this court, against Thomas Barnes, executor of the last will and testament of Ransome Barnes, late of said county, deceased,

requiring him to show cause why he should not be required
to give bond and security for the faithful discharge of the
trust reposed in him as executor of said last will and testa-
ment, and the said Thomas Barnes, executor as aforesaid, hav-
ing published his notice in the The Air Line Eagle, a public
gazette, for the space of two months, to all concerned, for
leave to resign the trust reposed in him as executor as afore-
said, and no objection having been made, and his resignation
having been accepted and allowed, and he having suggested
the name of A. F. Underwood as a fit and proper person to
carry out the administration on said estate, and no objection
having been made, and the said A. F. Underwood having
consented to take said administration, and having given bond
and security, and qualified in terms of the law; it is there-
fore ordered by the court that the resignation of Thomas
Barnes, executor of the last will and testament of Ransome
Barnes, deceased, be, and the same is hereby accepted and
allowed, and that A. F. Underwood, be, and he is hereby ap-
pointed administrator on said estate with the will annexed,
and that letters of administration do issue to him in terms of
the law.                    A. M. COCHRAN, *Ordinary.*"

The foregoing notice and order given in full, furnish the
grounds of objection to the admissibility of the letters of ad-
ministration, which were overruled by the court.

10th. Plaintiff also introduced witnesses on the stand, who
testified that defendants went into possession of the two lots
of land by permission of the testator, who was their father,
in 1841, or about that time, and had lived there ever since.

One witness stated that he had paid some rent wheat to the
testator once, when on a visit to his children in Gordon coun-
ty. He rented some of the land, he thought, in 1855 and
1856, and in 1860 and 1861, from the defendants, who, at
the time, told him they were authorized by their father to
rent such of the lands as they could not cultivate, and this
rent was to be paid to their father, but they were not to pay
any rent for what they cultivated themselves. Never heard

defendants claim any title to the land since the suit was begun. The land belonged to their father and they held under him, rent free, for what they cultivated themselves, about one hundred acres cleared, worth $3 00 to $3 50 per acre per annum for rent.

A. F. Underwood, the plaintiff, testified that after the executor qualified, he met defendant, Ransome Barnes, in Gainesville, and heard him complain that the executor had not been out to Gordon county to take possession of these lands, and that he was mismanaging the estate. He stated, also, that after his own appointment, in answer to a letter written by him; he received one from Ransome Barnes, the defendant, asking to be appointed agent to rent the Gordon county lands, and thus save witness the expense of traveling. The testator lived and died in Hall county—left ten or twelve children. His estate consisted of about five hundred acres of land in Hall county, and this land in Gordon, besides personal property.

·The executor had sold all the personal property before he resigned; never paid any of the money to witness; don't know what he did with it; witness sold the land in Hall county, for which he received about $1,300 00; thinks the executor sold the personal property for about $1,200 00.

After witness was appointed administrator he went to Gordon county to see about the land, and stayed all night with defendants, and they admitted to him that said lands belonged to their father's estate, and that they held the same during his lifetime, under him, and admitted themselves to hold under witness as administrator of said estate; never heard either of them claim any title to the land, or any part of it, until after this suit was begun; witness went to Gordon county again three or four months before suit was brought, and demanded possession, as he wanted to sell and close out the estate; they declined to surrender, because, as they said, they ought to be entitled to this land as their part of the estate.

All the witnesses testified that each of the lots were divided by the Oostanaula river, and that portion of them east of the

river was in Gordon county, while that portion of them west of the river was in Floyd county, the said river being the dividing line between the two counties. The jury, under the charge of the court, found a verdict for the plaintiff for the two lots of land in dispute. The defendants made a motion for a new trial on the several grounds set forth in the record, which was overruled by the court, and the defendants excepted. The errors alleged to the ruling of the court in refusing the new trial, which were insisted on here, were: First, in admitting in evidence the letters of administration over defendants' objections. Second, in charging the jury that the admissibility of the letters of administration was a question of law for the court, with which the jury had nothing to do. Third, in charging the jury that if they believed from the evidence the plaintiff was entitled to recover, he was entitled to recover all the land sued for, as well that being in Floyd county as that being in Gordon county, notwithstanding the suit was brought in Gordon county, on the 17th March, 1868.

1. The point made by the plaintiff in error upon the record of the court of ordinary of Hall county, appointing Underwood administrator on the estate of Barnes, is, that it appears on the face of that record, that his appointment was illegal, inasmuch as the positive requirements of the statute law of the state had not been complied with, as specified in the 2610th section of the Code, in relation to the appointment of the administrator when the former executor of Barnes resigned, the more especially as it did not appear that any *citation* was ever issued to the next of kin of the deceased testator to appear and show cause why Underwood (who, so far as the record shows, was a stranger in blood to the testator,) should not be appointed in the place of the defaulting resigned executor, and upon *his* recommendation, the said next of kin never having had their day in court to object to his appointment, and therefore the same was illegal. If this was an open question in this court, I should hold that the appointment of Underwood, as shown by the record from Hall, was made without authority of law, for the reasons stated in my

dissenting opinion in *Davie vs. McDaniel*, 47th *Georgia Reports*, 195, and for the additional reasons urged on the argument by the counsel for the plaintiff in error in this case. But the majority of this Court held, in *Davie vs. McDaniel*, that the judgments of the courts of ordinary in this state, in matters connected with wills and the administration of estates, were judgments of courts of general jurisdiction, and that the necessary jurisdictional facts need not to appear on the face of their proceedings.   Such is, therefore, now the settled rule of law in this state in relation to that question until the general assembly shall otherwise declare what is the true intent and meaning of the 4114th and 4115 sections of the Code.   -

2. There was no error in the charge of the court that the admissibility of the letters of administration was a question of law for the court, with which the jury had nothing to do.

3. Nor do we find any error in the charge of the court, from the evidence in the record, that the plaintiff was entitled to recover the land sued for in the county of Floyd, although the suit was commenced in the county of Gordon in March prior to the adoption of the constitution of 1868, which declares that cases respecting titles to land shall be tried in the county where the land lies, except where a single tract is divided by a county line, in which case the superior court of either county shall have jurisdiction.   When this case was tried, in 1874, the court had jurisdiction to try it in either county, and it was *tried* in Gordon county, the county line between Gordon and Floyd counties dividing the tract of land sued for.

Let the judgment of the court below be affirmed.