## HEAD *vs.* BRIDGES *et al.*

1. One of two executors, during the month of December, 1868, made application to resign his trust on the ground that he intended to remove from the county, suggesting his co-executrix, who was the widow of the decedent, as a proper person to succeed him. On December 6th, 1868, an order was passed which recited that whereas such application had been made, and whereas (naming her) the "widow, etc., and next of kin of testator aforesaid, has been cited to appear at this term," etc., and thereupon ordered that the applicant be dismissed upon settling with his successor. There were minor children and legatees:

*Held*, that the proceedings showed on their face that no proper notice cf the application was given, and the discharge was a nullity; and on a citation for settlement by other legatees than the widow, the record of the discharge was not admissible in evidence.

SPEER, J., dissenting.

2. One issue in a case being whether an executor had settled an individual debt of his with a note belonging to the estate, or with another note belonging to himself, it was competent to prove by the maker of the latter note that he had paid it to the individual creditor of the executor.

(*a.*) Interrogatories must be sufficiently explicit to indicate to the opposite party the nature of the testimony expected, but they need not show the use which the party taking them expects to make of the answers.

3. Where a charge in writing is requested, and the presiding judge has not time to prepare it during the trial, an adjournment from one afternoon until the next morning in order to give time for its careful preparation is not error.

(*a.*) The better practice in such a case would be not to state to the jury at whose request the charge was to be put in writing; but that the court did so state will not necessitate a new trial in this case.

4. Unless a request to charge is itself a complete statement of the principle invoked, without requiring addition or alteration to make it perfect, a failure to give it will not require a new trial.

(*a.*) Where there are two or more executors of a will, each is liable for his own acts only, unless by his own act or gross negligence he enables or permits his co-executor to waste the estate.

(*b.*) If one executor, whether intentionally or otherwise, contribute to the *devastavit* of his co-executor, he will be responsible.

5. We cannot say that the jury erred in their finding on the facts of this case.

6. In deciding upon the credibility of witnesses, the jury may consider not only their manner of testifying, their intelligence, their means of and opportunity for knowing the facts, and their interest or bias, but also their character for integrity and veracity, if known to them.

Ordinary. Jurisdiction. Judgments. Administrators and Executors. Before Judge LAWSON. Jasper Superior Court. April Term, 1881.

Reported in the decision,

A. D. HAMMOND; W. A. LOFTON; JOHN I. HALL, for plaintiff in error.

BERNER & TURNER; F. JORDAN, for defendants.

CRAWFORD, Justice.

Bennett Bridges died testate, in April, 1865, leaving his wife Mary Ann Bridges, and William H. Head to execute his will. They both qualified. The undisputed facts are that he died free from debt; that upon application to the ordinary of the county an order was passed authorizing the sale of some portions of the surplus provisions for the expenses of the estate. That the personal property on hand at the death of the testator, except the year's support, that which was given by special legacy to the widow, the notes, cotton and cotton seed, was sold December 13th, 1865, for the sum of $2,519.41.

That the deceased had two notes on William Johnson for about $800.00, made before the war. One on Jane M. Holland, for $1,737.95, and one on H. B. Ridley, for $31.00. He had also on hand seventeen bales of cotton, worth $1,875.69, 390 bushels cotton seed, of the value of $39.00, making in the aggregate $6,913.75, all of which went into the hands of the executors.

That on the sixth day of December, 1868, the defendant, Head, tendered to the ordinary of the county his resignation as executor, and on the 15th of the same month gave his promissory note to Mrs. Bridges for the sum of $1,539.18, in full of his liability to the estate. And that on the same last mentioned day he took from Mrs. Bridges a receipt in full of all assets for which he was liable to the estate. To the foregoing statement of facts the parties agree.

On the first Monday in March, 1879, Mrs. Bridges and Wm. H. Head, as the executrix and executor, were cited to appear before the ordinary for a settlement of their accounts, and after a trial before him the case was carried to the appeal upon the application of Wm. H. Head, who was dissatisfied with the judgment pronounced.

An auditor having been appointed by order of the superior court, he reported, after an investigation of the matters submitted to him, that the executors were liable:

For sales of personal property, . . . . . . . . . . $2,519.41
For the two promissory notes on Wm. Johnson, . . . . 700.00
For the note on Jane M. Holland, . . . . . . . . . 1,542.75
For four-fifths of $600.00 worth of cotton belonging to the
    estate of deceased, and invested in a house and lot pur-
    chased from Wm. H. Head by Mrs. Bridges for her in-
    dividual use, . . . . . . . . . . . . . . . . 480.00

To these amounts were added interest, which after deducting the one-fifth belonging to Mrs. Bridges, left due $7,770.47 belonging to the other legatees. In addition to the foregoing joint liability, he reported as due from Wm. H. Head, individually, $132.80.

To this report the legatees excepted because the auditor had not found four-fifths of the house and lot at its purchase price of $2,400.00, as belonging to the estate, the same having been paid for of out the money of the estate.

The defendant, Head, for himself also, filed exceptions to the finding of the auditor as to his liability for the sale of the personal property, which, with its interest, amounted to the sum of $5,017.67. Also to his liability for the sum of $700.00 on the notes of Wm. Johnson, together with the accumulated interest, amounting to $1,248.53.

Exceptions were also filed to the finding wherein he was held liable for $2,526.64, being amount of the Johnson *fi. fa.* which had been taken in settlement of the debt on Jane M. Holland, and which had been lost. And further to the $736.20 found against him on the house and lot, as also to the finding of the $55.29 on the Ridley note.

Amendments were made more specifically setting out the grounds of exception to the liability of the defendant on the sale of personal property, and the settlement of the Johnson promissory notes.

On the trial of the case before the jury they found the defendants liable on the amount of the sale bill, $4,147,87.

| | |
|---|---|
| On the Head note, (meaning the Johnson notes), . . . | $1,248.52 |
| Loss on the Johnson *fi. fa.*, (Jane Holland note), . . . . | 2,326.64 |
| House and lot, (bought by Mrs. Bridges of Head), . . . | 4,060.66 |
| Less one-fifth, Mrs. Bridges' share, principal and interest, . | 2,396.73 |
| Leaving owing, . . . . . . . . . . . . . . . . | 9,586.96 |

The defendant, Head, moved for a new trial, and the same being refused, he excepted.

1. The first question made by the record is whether the judge erred in ruling out the application made by the executor, Head, to be discharged from his trust as executor, and the order of the ordinary passed in reference thereto.

The application and the order, which constituted the entire proceedings, were tendered together, and were as follows:

" GEORGIA—Jasper county.

*To the honorable court of ordinary, December term, 1868 :*

The petition of W. H. Head, of said county, showeth that heretofore, to-wit : on the day ——— of ——— Bridges, of said county, testate, that in and pursuant to the will of said deceased, petitioner was nominated and qualified executor thereto ; that the said petitioner intends soon to move from said county and desires, therefore, to resign his trust as executor as aforesaid ; that Mrs. Bridges, widow and relic of said deceased, who was nominated and qualified as co-executor to said will, is a suitable person, qualified and entitled to, and willing to, accept the trust ; wherefore, your petitioner prays a citation to issue to said Bridges' widow, etc., and the next of kin of said testator, requiring them to appear at next regular term of said court on the first Monday in December, inst., to show cause why an order should not be granted discharging petitioner from said trust, and prays an order in the sound discretion of the court discharging him as aforesaid.

LOFTON & HUTCHISON,<br>*Attorneys for petitioner.*"

"GEORGIA—Jasper county.

*Court of Ordinary, December term, 1868 :*

WHEREAS, William H. Head, of said county, who was nominated and qualified as executor to the last will and testament of Bennett Bridges, late of said county, deceased, applies to this court to resign

his trust as executor of aforesaid, stating in said application that he intends to remove from the county, and nominated Mary A. Bridges, widow of said deceased, and co-executor of said deceased, as a suitable person, qualified and entitled to, and willing to, accept the said trust; and, whereas the said Mary A. Bridges, widow, etc., and next of kin of of testator aforesaid, has been cited to appear at this term of the court and show cause why such resignation should not be allowed, and no objection is made, therefore, ordered, the resignation be, and it is hereby, allowed, and the said W. H. Head, executor, etc., is discharged from his trust whenever he has fairly settled his accounts with his successor and filed with this court a receipt in full of such successor.                        M. H. HUTCHINSON,
                                                  *Ordinary.*"

*December 6th, 1868.*

The application shows upon its face that it was drawn in December, 1868, certainly, and almost quite as certainly on the very day the court met. Not only so, but it shows that no one had any notice or was cited to appear except Mrs. Bridges, the co-executrix of the applicant. These facts appearing on the face of the record itself, was not the whole proceeding a mere nullity, and should it not have been so treated by the court?

That the application was made in December, 1868, appears from the very words used in praying the citation requiring Mrs. Bridges, widow, etc., and the next of kin to appear at the next regular term of said court on the first Monday in December instant to show cause, etc. To say that instant, in the connection used, meant anything other than the present or current month, would be to charge a degree of ignorance and stupidity to the counsel preparing the application unworthy the humblest member of the profession, or else to stultify ourselves in defining the meaning of one of our plainest English words.

The order of discharge was passed on the 6th day of December, 1868, and it was therefore an impossibility to have given the ten days' notice required by law.

Again, the order of discharge recites that, "whereas, the said Mary A. Bridges, widow, etc., and next of kin of

testator aforesaid, has been cited to appear," etc., and no objection being made, the resignation was allowed.

This recital shows that Mrs. Bridges had been cited to appear, but when, how, or by whom, does not appear that we can find in the record. But it is insisted that the above order of discharge shows that the minors were served. The only reasonable construction which we think the words are capable of is, that Mrs. Bridges, widow of said deceased, and co-executor with the petitioner, and who is the next of kin of testator, has been cited to appear, etc., and can in no wise be made to refer to the minor children, whose names nowhere occur in the whole proceeding, either by themselves or guardian. We are not to be understood as holding that the jurisdictional facts are to appear on the face of the proceedings to support the judgment, but that where the record offered shows affirmatively that the court did not have jurisdiction, then the judgment may be treated as a nullity. In the case of *Barnes et al. vs. Underwood*, 54 *Ga.*, 92, the objection was that the order accepting the resignation did not recite that the next of kin had been notified. We concur in the correctness of that ruling, and hold that such recital is not necessary; but if the order had shown that they had not been served with notice, then the case would have been similar to this, and we doubt not but that the ruling would have been the same as that which we now make. Code, §§3594, 3828; 9 *Ga.*, 130; 34 *Ib.*, 167; 12 *Ib*, 428 (4).

2. The next ground of error alleged is that the depositions of Bartley Walker were illegally rejected by the court, because they were uncertain, illegal, and did not illustrate any issue in the case. Upon the investigation before the auditor, one of the items of indebtedness against the defendant, Head, was that he had used the two notes of the Bridges' estate on William Johnson, his father in law, to pay one of his own, held by Johnson against him. Mrs. Bridges testified that such was the fact, and Head

admitted it to be true, but he claimed afterwards that he was mistaken, and that he had paid his note to Johnson, not with the Bridges' notes, but with notes held by him against Burney & Walker.

The interrogatories were taken for Walker to prove that he had paid his note to Johnson, which tended to confirm the testimony of Head that he had not used the Bridges' notes to pay Johnson, but the Walker note. The materiality of this testimony is not questioned. The objection goes to the want of sufficient certainty to notify the plaintiff's counsel of the nature of the testimony sought and expected, as provided in section 3879 of the Code.

The only facts known to Walker, and which possibly might be made relevant to the case, were that he had made a note to one Cochran, and had paid it to Johnson, and the questions asked went only to those two facts. The cross-interrogatories could have gone to any enquiry touching those facts, either as to their existence, or their connection with the parties to the transaction, or to the case. There could have been no doubt as to what testimony was sought or expected. We do not think that the section of the Code which we are considering contemplated that a party taking testimony by commission should be required to state in his interrogatories the use which he intended to make of the answers. The testimony should have gone to the jury for their consideration in fixing the liability of the defendant, according to its weight with them. No man should ever be made liable for a debt which he does not owe.

3. It is complained that the judge erred in failing to charge the jury immediately after the conclusion of the argument, because he said that the defendant's counsel had requested him to give his charge in writing, and therefore he could not give it until the following morning. That the judge took time to consider of and reduce his charge to writing, was highly commendable, even though

not requested by counsel, but when so requested it is no longer optional, but compulsory, and time is absolutely necessary to its preparation.   Still we think that the better practice would be, not to state to the jury at whose instance the request comes, and especially so if the jurors are not to disperse.   A simple announcement of the fact that the court, having been requested to give the charge in writing, a little time was. necessary for its preparation and delivery, would sufficiently explain the delay, and give no cause of complaint against either party.

4. Another ground upon which error is alleged is the refusal of the judge to charge, as requested in substance, that if Mrs. Bridges committed waste, Head would not be liable, unless by gross negligence he enabled or permitted her to commit the waste.

This request not being strictly legal, the judge was not bound to give it, as asked.   Whenever a request to charge is made, it should contain in itself the principle invoked accurately stated, so that no changes are needed to make it perfect.   The law of the joint liability of executors is that each one is responsible for his own acts only, unless by his own act or gross negligence he enables or permits his co-executor to waste the estate; therefore the request was imperfect, in that what might have been done by the executor's own act was omitted.   Code, §2449.   Besides, we think that the law of the case was put properly to the jury on this subject by the judge in his general charge.

The defendant's counsel further requested the court to charge the jury in this same connection that if Head honestly believed he was discharged, and settled with Mrs. Bridges, he would not be responsible for her waste, unless he was a party thereto and participated therein. . The rule of law, as laid down by this court in the case of *Hall et al. vs. Carter & Kennan*, 8 *Ga.*, 393, is, that if one executor, intentionally or otherwise, contributes to the *devastavit* complained of, he will be responsible.   If he is active in the matter, and by his action, whether with in-

v 67—16

tention to commit a *devastavit* or not, enables the co-execu-
tor to commit it, he will be liable with him.   The honest
belief or intention with which the defendant acted does
not change his liability.    His acts and their effect, not his
honest belief, govern the case.

5. As to the finding of the jury on the facts of the case,
we are not prepared to decide that they were wrong.   If
there are amounts charged twice, it has not been made
manifest to us.   If Head, the defendant, cannot tell for
what the note for $1,539.00 was given, we certainly cannot.
It is, however, positively stated in his testimony on the
trial that it represented none of the seventeen bales of
cotton owned by the deceased at his death, the money
for that was used by himself and partner, but he does not
remember when it was paid back.   If the $1,539.00 note
represented any part of the sale bill, and it was found to
be so by the jury, then whatsoever of that sum was again
found against him in the house and lot would be wrong.
In other words, the indebtedness of Head, which went to
make up the note for $1,539.00 and the note, too, should
not be charged up against him.

6. The only remaining ground of error arises upon the
following charge to the jury in reference to the credibility
of witnesses:    " Consider their manner of testifying, their
intelligence, their means and opportunity of knowing the
facts to which they testify, their character for integrity
and veracity if you know it, their interest in the case or
their bias, if they have any."    The special objection urged
against this charge is that the jurors were instructed to
consider of the character of the witnesses for integrity
and veracity if they knew it.   All facts are to be deter-
mined by the jury.   One method of establishing them is
by the introduction of witnesses to prove their existence.
These witnesses must of necessity be passed upon by the
jury.   They are the chosen discoverers of truth.   The
competency of the witness is for the court, the credibility
for the jury.   The verdict is fixed not so much by the

number as by the character of the witnesses In *Rogers vs. King*, 12 *Ga.*, 229, Chief Justice Lumpkin says that, " When the evidence is contradictory and irreconcilable, it is the duty of the jury to look to all the facts and circumstances of the case, the character of the witnesses, etc., and thus determine on which side the credibility preponderates, and render their verdict accordingly." Character for what? For strength? for courage? for intoxication? for violence and bloodshed? By no means; but character for integrity and truth. The discovery of truth is the object of all legal investigation. Code, §3747.

To force a jury to accept every utterance of a witness as truth, would be to deny the right to weigh testimony, and compel them to find two facts utterly inconsistent and impossible, as co-existent, oft-times not less so than that noon and midnight existed at the same place at the same time. One of the very objects of the evidence act, and the prisoner's statement, was to put character for integrity and truth, in the balance against circumstances, or even against a cloud of witnesses.

The jurors themselves from the remotest periods were taken from the vicinage pursuant to that maxim, *vicini vicinorum facta præsumuntur scire;* they were considered the most proper judges of the facts done within its limits, as being most likely to be proved by witnesses, and charged upon persons with whose integrity and reputation they were best acquainted. Bacon's Ab., Vol. 5, Tit. Juries, p. 351.

What, we ask, can more strongly aid in the ascertainment of truth, than the acquaintance of jurors, not only with the integrity and reputation of the parties, but of the witnesses as well?

Judgment reversed.

JACKSON, Chief Justice, concurring.

We are all agreed in the grant of a new trial; but Justice SPEER differs from the majority of the court in respect to

the admissibility of the judgment of dismissal of the administrator by the court of ordinary. On that point the court is a unit on the law, but the difference arises on its application. We are all agreed that since the Code, courts of ordinary are courts of general jurisdiction, and therefore the facts which give the jurisdiction need not appear on the face of the judgment or record; but in case nothing appears to the contrary on their face, the jurisdiction is presumed. If, however, they carry their death-wound on their face, in the expressive language of Judge WARNER in the tax cases, and the slave-consideration cases, which were judgments of the superior courts, if the fact which alone gave jurisdiction be recited, and from that fact it appears that the court had no jurisdiction on the very face of the record, then the judgment is dead, and a nullity everywhere. The judgments of the court of ordinary are surely not of greater dignity than those of the superior courts, and they fall before such a wound.

In this case it appears on the face of the record evidence, offered to the jury and rejected, that citation issued on the 6th of December, and that it cited the widow and next of kin to appear on the first Monday in December instant, that is necessarily on the very day of the citation or the next day at farthest. So that, on the face of the record offered in evidence, appeared the very thing which made it a nullity, the want of jurisdiction of the person.

I think that the case in the 54th *Ga.* is distinguishable from this case in this very particular, that though in that case the citation was irregularly served by publication, it did not appear that there was no personal service, and the court presumed there was. But in this the service—the personal service—was spread on the face of the record offered as evidence, and was no service in law; so that the want of jurisdiction was on its face, and I think it was properly rejected. The judgment in the 54th *Ga.*, and the opinion, were written by the same distinguished judge who applied the death wound to the superior court judgments, not on

Head vs. Bridges et al.

any such ground as that they were courts of limited jurisdiction, and the jurisdictional facts .must appear on their judgments, but on the ground that facts were recited on their face which showed that the court had no jurisdiction to render the judgments. So here, facts are on the face of this record, which was rejected as evidence, which show that the court of ordinary had no jurisdiction to award the judgment it rendered, and was therefore a nullity, and could be attacked and turned out of court wherever it showed its face.

I concur, therefore, in the views expressed in the opinion of Justice CRAWFORD that this judgment should have been rejected as testimony, and that the superior court did not err in rejecting it.

Whether the service was intended to embrace the minors or not, is immaterial in the view I take of the point. It was no service in law upon anybody. The words, "next of kin," in the citation and the service, may mean the minors, as Justice SPEER thinks, or only the widow, as is contended by Justice CRAWFORD; the one or the other may be right on this point; and still my opinion on the rejection of the judgment would be the same. The whole service on both widow and whosoever are meant as " next of kin," is so invalid as not to give the court jurisdiction to bind either the. widow or anybody else meant as next of kin, if anybody else was meant.

SPEER, Justice, dissenting.

I concur in the judgment granting a new trial upon the grounds therein stated, but I must dissent from the judgment they have given in overruling the second ground of the motion for new trial, which was the error assigned on the ruling of the court below in rejecting, when offered as evidence by Head, the petition for and order permitting Head to resign his trust. I think, under the recitals in the record offered, it was admissible to go to the jury. The record does not disclose the ground upon which it

was rejected, but only the fact that objection was made to the petition and order as evidence, on the ground that the next of kin were not notified of the proceeding, that the next of kin were minors and without guardians.

There is no evidence in the record that the next of kin were without guardians at the time of the order of the ordinary granting the resignation of Head.

I think these recitals in the record taken *prima facie* as true, showed the next of kin were notified, and if so it will bind them, for it will be presumed in favor of such a judgment that the minors were served. 4 *Ga.*, 516, 618.

The authority to accept the resignation was in the ordinary, and the law presumes the ordinary had the requirements of the law complied with before the order was passed. 4 *Ga.*, 154; 7 *Ga.*, 562. I think the admissibility of this evidence was proper under a decision of this court made in *Barnes vs. Underwood, administrator*, 54 *Ga.*, 87, and upon the reasoning of that case, as well as the principle decided, I rest my dissenting opinion.