HALL *vs.* THE STATE OF GEORGIA.

1. When a preliminary examination is had as to the force, threats of violence, etc., used to procure a confession from the defendant, the better practice is, and impartial justice demands it, that the jury should retire whilst the admissibility of the evidence is considered by the court.

2. When, therefore, one witness testified in the presence of the jury, on such examination, that he heard the defendant confess to others, and another witness that he made a confession to him, a new trial will be ordered, even though the confession itself was excluded.

3. It was error in the court to charge upon the hypothesis of the pistol of the deceased having been found in the possession of the defendant on the day after the homicide, when the evidence disclosed that the weapon was discovered in a house occupied by defendant jointly with others, without alluding to the joint occupancy, and their equal facilities to have concealed it.

Criminal law. Practice in the Superior Court. Confessions. Charge of Court. New trial. Before Judge SIMMONS. Crawford Superior Court. March Term, 1879.

Reported in the opinion.

STROUD, SMITH & WINSLOW ; HALL & SON ; BACON & RUTHERFORD, for plaintiff in error.

C. L. BARTLETT, solicitor general; W. S. WALLACE ; L. D. MOORE, for the state.

CRAWFORD, Justice.

The defendant in error was jointly indicted with Green Thurman, Sr., Isham Thurman, and Green Thurman, Jr., for the murder of Augustus H. Murchison. He was tried separately, and a verdict of guilty rendered against him. A motion for a new trial was filed, upon several grounds, and, after argument had, the same was refused by the court, and the plaintiff in error excepted.

The state relied upon circumstantial evidence and con-

fessions for a conviction, and whilst this court will not say that the evidence offered was or was not sufficient to justify a verdict of guilty, yet we are of opinion that there were errors committed in the admission of some of the evidence touching the confessions said to have been made, as also in reference to one of the charges given by the court, under one or both of which the jury may have been induced to render their verdict.

I. 2. The sheriff of the county was introduced by the state to prove certain confessions of the prisoner, and he was asked: "Did you have him under arrest for this kill ing?" Ans. "Yes." "Did he make any statement to you about it?" "Not directly to me, he has not. I heard him make it to somebody else." "Did you hold out to him any reward, or did you threaten him in any way?" "I did not, sir." "Where was it?" "In the court-house here." "What did he say to you?" This question was objected to by prisoner's counsel to inquire "whether others had not used threats to prisoner to get this statement?" "I think they had, sir." "Is it true that Mr. Stroud had just fired a pistol off close to Joe and threatened to kill him if he did not tell all about it?" "I heard a pistol fire, and Mr. Stroud told me." "Was not the statement you speak of made immediately after the pistol was fired?" "Yes." "Did not Stroud come in with a pistol in his hand just behind Joe, and was it not just then that Joe made the statement to you?" "Yes, sir."

Mr. Stroud testified as follows: "Was employed as counsel by Green Thurman, but not for Joe Hall, at the time the alleged statement was made. Immediately after I made these threats to Joe, I told him I would protect him as an attorney. After he made some confessions, I would protect him. I threatened to kill him if he did not tell what he knew about the killing of Murchison. Mr. Bond, the sheriff, had Green Thurman, Joe Hall and these two boys, Isham and Green Thurman, Jr., under arrest in the ordinary's office. I got permission to take them to my

office in the basement.   I think Mr. Dannielly was with me.   I took Joe along, and asked him to tell me all about the circumstances of Murchison's death that he knew.   It was the first night after Murchison's death, and Joe said he knew nothing about it.   I pressed him to make a statement, and he declined to make any.   I finally pulled out my pistol—I think I had it out all the time while with them, as I was assisting Bond in guarding them—and I pointed the pistol near his head and fired it off right at (by) his head.   I told him I was going to kill him if he did not tell me all about the circumstances of the killing of Murchison.   I cocked my pistol again, and said I missed you that time, but the next time I'll get you.   He said hold on, he would tell all of it, and did so.   Bond came in immediately afterwards, and that is the statement that he refers to."

" I kept the pistol out, and if he would slack up I would threaten him again and spur him up.   He was in a tremble, seemed much excited, and begged me not to kill him."

It is to be remembered that the scene described transpired on the first night after the homicide, in the court-house, the most public place in the county, and although it does not appear that any of the jurors knew what that confession was, yet they had heard the testimony of Bond and Stroud upon the stand, and whatsoever the confession was, was probably as well known to the jurors as to the witnesses.   Even if this were not so, *at that time, on the trial, in their presence*, the sheriff swore that the prisoner made a statement, not directly to him, but he heard him make it so others, a statement about the Murchison murder.   Stroud, *at the same time, on the pending trial, and in their presence*, testified that he made confessions to him of all the circumstances of the Murchison murder.   It is true that the presiding judge refused to allow the confessions which these witnesses *swore* that the prisoner had made, to be repeated to the jury, yet every member of it knew

that a confession in this connection meant the acknowledgment of the crime, an open declaration of his guilt.

It is the unanimous judgment of this bench, that when such preliminary examinations as this are to be had, that the better practice is, and impartial justice demands it, that the jury should be retired from the box whilst the admissibility of the evidence is considered by the court. When he has ruled upon it, let the jurors be brought in, and the cause proceed with such further rights as the law gives to the prisoner upon his confessions. His honor, Judge Simmons, did that which is usual and customary; he properly refused to allow the testimony, held it illegal and inadmissible, but how vain a thing it was for those jurors to seek to efface from their memories the pregnant words of these two witnesses, who *swore* that he *had made* confessions, though the *words* thereof were withheld from them. And if at any time the verdict "in even balance hung," back came, unbidden, the words, he has confessed it all, and cast the beam against the prisoner upon that which the judge had vainly endeavored to exclude.

To let this verdict stand, therefore, would be not only a violation of the rights of the accused, but would be permitting the conduct of the parties having him in charge to pass unrebuked, whilst we regret to say that it meets with our most unqualified condemnation.

3. We think that the court erred in charging the jury as follows: "If you believe that Murchison had a pistol on the day of his death, and that the next day the pistol was found in the possession of the defendant, you may take that into consideration in determining whether or not he was connected with the crime. If the evidence satisfies you that it was Murchison's pistol, that he had it the day of his death, and that it was found the next day in the possession of defendant, or in a place where he had concealed it, then it was incumbent on him to explain how he got it, if he has not explained."

Our objection is not to the soundness of the principles

embodied in the charge, but that there is not in this record sufficient evidence to have authorized its being given. No witness testified that it was found either in defendant's possession or in a place where he had con- cealed it. James N. Harris testifies that "they found a couple of pistols that were in a house near that which was occupied by Green Thurman, Sr., where the boys slept— I suppose the boys slept there, there were bed-clothes there—we found one pistol in a box, every barrel was loaded ; one had been recently discharged, and seemed to be charged with a bright ball like pewter; the others did not appear to have been discharged recently. The other pistol was found at the southeast corner of the house, under some cotton seed, near the wall." None of the witnesses say positively that any one slept in that house, though they say it looked as if it were so occupied, still there was no bed in it, and it was shown that Green Thur- man, Jr., and Isham Thurman, the sons of Green Thur- man, Sr., were occupants as much so as was the accused. There is no testimony of any other witness fixing the possession of Murchison's pistol upon Joe Hall, or that he had it where it was found, stronger than that of Harris. Its possession, or concealment, therefore, was proven to have been quite as strongly put upon the other two co- defendants as it was upon Hall. And the naked charge of the judge, referring alone to the defendant, and of his having it in possession, or concealing it, without alluding to the joint occupancy of the house by the others, and their equal facilities to have concealed it, was such error as worked harm to the defendant. Besides, the only allu- sion in the evidence as to how the pistol got on the prem- ises was that Green Thurman, Sr. carried it there, and if that is true, its location and concealment might quite as likely have been the work of one of his sons as to have been that of Hall.

It is not out of place to say, that whenever there is a reversal of the judgment in such a case as this, that very

many of the people of the vicinage construe it to mean that, in the opinion of this court, the party is not guilty. With his guilt or his innocence this judgment has nothing to do—they are to be passed upon under the law and the testimony as the same shall be presented and adjudged upon the new trial which we herewith award.

Judgment reversed.