## MEISSNER *vs.* STEIN.

[This case was argued at the last term, and the decision reserved.]

1. Where a pilot brought into port a wrecked British vessel, which was libelled in admiralty, and was sold under decree of that court, to which he was a party, and the vessel was thereafter refitted, and her name and nationality changed, she was a new vessel, and the pilot was not entitled to pay, by reason of having tendered his services to carry her out of port, on the ground that he had brought in the wreck.

2. Pilots in ports and harbors are bound by their oaths to tender their services to vessels coming in or going out. If a pilot first tenders his services to an out-going vessel, and they are accepted, he is entitled to compensation; if not, he is entitled to none. If a pilot, cruising outside of the bar, tenders his service to an incoming ship (except coasters in the state, etc.), he is entitled to compensation, if his services are rejected; and should such services be accepted, it entitles him to pilot her out again, or to recover compensation therefor, except in cases of misbehavior, revocation of license, etc.

May 13, 1884.

Pilotage. Maritime Law. Rivers and Harbors. Ports. Before Judge Adams. McIntosh Superior Court. May Term, 1883.

Reported in the decision.

CHISHOLM & ERWIN ; L. E. B. DeLORME, for plaintiff in error.

LESTER & RAVENEL, by R. R. RICHARDS, for defendant.

HALL, Justice.

A pilot brought a wrecked British vessel into port, which was libelled in admiralty and sold under a decree of that court, to which he was a party, and, after being so sold, was refitted by the purchaser, and her name and nationality changed. He offered his services to carry her out to sea, which were declined. Thereupon he brought suit in a justice's court held in McIntosh county, for the fees to which he claimed he was entitled for having offered to pilot her out, and had a judgment for the demand, which, on appeal to the superior court, was affirmed. He rests his claim upon two grounds :

(1.) That having brought the vessel in, he was entitled to carry her out, although her ownership had passed to another, and she had thereafter acquired a new name and nationality.

(2.) That if this claim was not well founded, by reason of the changes aforesaid, then, having tendered his services as a pilot to the outward-bound ship, which were refused, it and its owners, etc., became liable to him, under our law, for the fees which he would have earned, had his services been accepted.

1. We think he had no right of action on either ground ; certainly not on the first, because the outward-bound vessel was not the same which he had picked up at sea and brough into port. He brought in the Termagant, a British vessel, which had been sold under the decree in admiralty, and thereafter rebuilt and stood out to sea as an American vessel. This was her first trip under her new name and nationality. She was completely transformed

in both these respects, and was,.to all legal intents and purposes, an entirely new vessel, as much so as she would have been had she been built out of entirely new material in her home port, from which she was sailing for the first time. When the Termagant was lawfully sold, under the decree in admiralty, the purchaser took an absolute title to her, divested of all pre-existing liens. The sale was for the benefit of all concerned, including lien holders. The liens were transferred to the proceeds of the ship, which, in the sense of the admiralty law, became the substitute for the ship. The Amelia, 6 Wallace, 18, 29, 30 ; 40 *Ga.*, 178, 180 ; Cohen's Admiralty Law, pp. 199, 200, 201. This is putting the claim for pilotage upon the highest possible ground, for it is by no means certain that it rose to the dignity of a lien, or was anything more than a simple right against the master, owner or consignee of the vessel, under sections 1513 and 1514 of our Code. Be this, however, as it may, the entire claim for pilotage was passed upon in the court of admiralty, and whatever its character was, it was paid out of the proceeds of the sale of the vessel and her cargo, and the plaintiff in this suit was thereby estopped from setting up any further demand, either for inward or outward pilotage. Benedict's Admiralty, §364, and citations.

2. While it is true that a pilot is bound by his oath "to repair on board of every vessel which he shall see and conceive to be bound for, coming in, or going out of the port or harbor," Code, §1506 ; yet, if this tender of service is made to and rejected by an outward-bound ship, no law, either maritime or statutory, or port regulation of which we are aware, gives him any right of action for damages or fees against the vessel, her master or owner, etc. The pilot is entitled to no other fees or rights of action than those given by law, and whether a vessel, going out to sea for the first time, is compelled to take a pilot on board, if one offers his services, need not be decided; the question is, whether the pilot is entitled to recover

damages or compensation for services tendered, but which were rejected by the owner and never performed, and not whether the owner or master is liable to be proceeded against by the commissioners of pilotage, or other authorities, for an alleged breach of duty in this respect. Every pilot-boat cruising or standing out to sea must, under a prescribed penalty, offer the services of a pilot to the vessel nearest the bar, unless, etc., Code, §1511, and if the master or commander of the ship or vessel bearing towards any of the ports or harbors of the state (except coasters in the state, etc.), shall refuse to receive the pilot on board, he becomes liable, on his arrival in port, to pay the pilot so first offering his services outside the bar, the full rate of pilotage established by law for the vessel, *Ib.*, 1512; and where a pilot brings a vessel into port, he has the exclusive right to take her out, and no other pilot can be employed for this service, unless it can be proved to the satisfaction of the commissioners of pilotage that the one bringing the vessel in has misbehaved himself while in charge of her, or had, in the meantime, been deprived of his license, or had obtained the inward pilotage against the right of some other pilot first offering his services. *Ib.*, 1513. A pilot bringing a vessel into port is entitled to his fees before her departure from the port, to be paid in advance, or secured, and on failure thereof, he may refuse to carry her out, and may recover from the owner, master or consignee of the vessel, all fees for pilotage in any court having jurisdiction of the cause. *Ib*, 1517.

From this it will be seen, to adopt the language of the distinguished counsel for the plaintiff in error, "where the vessel is going out and not coming in, whilst the pilot may be obliged to repair on board and tender his services inside the bar, he is not entitled to compensation for services tendered and not accepted, unless he is the pilot who had brought the vessel into port. In all other cases the pilot occupies no better position than any other officer of the state, whose fees are fixed by law. He is entitled to his

compensation for services rendered.   Because he has been favored in two special exceptions and permitted to collect for services tendered, this is no reason why the exception should be made the general rule." In *Thompson vs. Spraigue, Soulle & Co.*, 69 *Ga.*, 409, this court gave, as a reason for favoring pilots boarding vessels outside the bar and bringing them into port, that commercial necessity called for hardy, energetic and fearless pilots, and that it was the policy of the state to encourage enterprise, and engender among them a laudable rivalry to venture beyond the bar, or its immediate proximity, that they might be ever ready to lend aid to vessels making for the port. The construction now insisted on, and which was adopted by our learned brother of the circuit court, would, as it seems to us, contravene this wise and prudent policy, and weaken the inducements held out by the law to pilots to venture out to sea.

We agree with the learned counsel who argued for the plaintiff in error, that a decision in favor of the claim of a pilot tendering his services to a vessel going out would be productive of unfortunate results, which would greatly impair, if it did not destroy, the efficiency of the system.     Pilots would not have the same inducements to cruise outside the bar for the benefit of commerce, but would quietly remain in port, and content themselves by collecting outward pilotage from every vessel leaving the harbor. We cannot think the legislature contemplated that their pilotage laws would ever receive the construction now contended for; and to sanction it, we think, would not be construction in a legitimate sense, but judicial legislation, by which rights and conditions would be annexed to the law, never intended, and certainly never expressly or impliedly enacted by its authors. The law, as it stands, gives to pilots in ports and harbors the right to compensation for services actually rendered and accepted, but to those cruising outside of the bar it secures compensation for services tendered; and should the services thus tendered

be accepted, it entitles them not only to inward, but outward, pilotage fees for the vessel accepting the tender made outside the bar.   These favors are extended only to the daring and vigilant guide, who encounters and braves the dangers of the seas.

The plaintiff in the court below made no case that entitled him to recover, and the finding in his favor must be set aside, and a new trial awarded.

Judgment reversed.