## WEAVER *v.* CARTER.

In the case of *Henderson* v. *Reynolds*, 84 *Ga.* 159, this court decided that there was no legal or moral wrong in receiving on the Sabbath day a verdict which had not been agreed upon until after that day had begun. This decision was rendered after an examination and consideration of the case of *Bass* v. *Irvin*, 49 *Ga.* 436, and it was held that the ruling therein made presented no legal obstacle to the conclusion reached in the case first above mentioned. This conclusion was followed as sound in the case of *Bernstein* v. *Myers*, 99 *Ga.* 90. Under the authority of the cases in the 84 *Ga.* and the 99 *Ga.*, it is now held that such a verdict is not unlawful.

ATKINSON and LITTLE, JJ., dissenting. Where in a justice's court a case on the appeal was tried and submitted to a jury on Saturday, and being unable to agree before the intervention of Sunday, the jury continued their deliberations until Sunday evening, when, having agreed, the court was opened, and the verdict was received and the jurors discharged, such verdict so rendered and received was an illegal verdict, under the laws of this State, and no judgment could be rendered thereon; and the court committed error in not sustaining the certiorari and ordering a new trial in the justice's court.

Submitted April 20, — Decided May 20, 1897.

Certiorari.　Before Judge Gober.　Fannin superior court. May term, 1896.

*O. R. Dupree* and *W. H. Terrell*, for plaintiff in error.

SIMMONS, C. J.　The right of a court to receive a verdict on Sunday and the legality of such action is, in my opinion, demonstrated in the case of *Henderson* v. *Reynolds*, 84 *Ga.* 159, and the authorities there cited.　Other decisions might be cited, made since the case above mentioned was decided, but I deem it unnecessary to encumber the records with them. The doctrine seems now to be almost universal in this country. Besides, this court, composed of the writer and Justices Lumpkin and Atkinson, has approved the decision made in the case of *Henderson* v. *Reynolds* by the decision in the case of *Bernstein* v. *Myers*, 99 *Ga.* 90, s. c. 24 S. E. Rep. 854.

It is now contended, that although this court has decided in the two cases mentioned that a verdict can be legally received on the Sabbath day, it is not the law of this State, because the court, in the case of *Bass* v. *Irvin*, 49 *Ga.* 436. decided that a verdict so received was illegal and void, and that this court could not overrule that case without having it reviewed in accordance with section 5588 of the Civil Code, which is as follows: "A decision concurred in by three judges can not be reversed or materially changed, except by a full bench, and then after argument had, in which the decision, by permission of the court, is expressly questioned and reviewed; and after such argument, the court in its decision shall state distinctly whether it affirms, reverses or changes such decision."　This section applied when the decisions in *Henderson* v. *Reynolds* and in *Bernstein* v. *Myers* were made,

and the court was then composed of but three Justices.   Since the court has been increased to six, the same rule applies except that it requires five Justices to reverse or overrule a previous decision made by a bench of three.   So it appears that, at the time of the decision in *Henderson* v. *Reynolds,* a prior decision by three Justices could not be reversed unless it had been reviewed as required by the above section of the code.   To all of this I fully agree.   The decision in *Henderson* v. *Reynolds* was made with a full knowledge of this section of the code.   In that decision *Bass* v. *Irvin* was expressly referred to.   It was admitted that the reasoning of the court in that case was in conflict with the views announced in *Henderson* v. *Reynolds,* as well as in conflict with all the other authorities; but it was said by the court that it was not necessary in *Bass* v. *Irvin* for the court to have gone as far as it did in its reasoning upon this question.   In *Bass* v. *Irvin* a verdict was returned upon the wrong paper and no judgment entered up thereon.   A motion was made to transfer the verdict to the proper paper and to enter up judgment nunc pro tunc, and a rule nisi was issued calling upon the defendant to show cause why this motion should not be granted.   He showed for cause that no legal verdict was rendered in the case, because it had been returned on Sunday *in the absence and without the consent of the defendant;* and we said in the case of *Henderson* v. *Reynolds* that the decision of this court in *Bass* v. *Irvin* was perhaps correct; that the trial judge had no right on Sunday and in the absence and without the consent of one of the parties to receive the verdict; that the parties had a right to be present when the verdict was received; and added:   " This court as now constituted would follow that case under an exactly similar state of facts, unless we were called upon to review it; but we would not feel bound by all of the reasoning of the decision."   Here then is a decision of this court, concurred in by three Justices, in which it was held that it was not necessary for the court to go as far as it did in its reasoning upon this question.   This was the unanimous judgment of the court, that *Bass* v. *Irvin* was not controlling upon the question of the reception of a verdict on

Sunday. That decision, whether right or wrong, has the same binding force upon subsequent members of the court as is given any unanimous decision of the court by the above cited section of the code. It does not reverse *Bass* v. *Irvin*, but simply holds that under the facts of that case it was not necessary to decide what was decided therein. The course pursued by the court in *Henderson* v. *Reynolds* has been, as far as I can ascertain, the one uniformly pursued since the passage of the act of 1858, now codified as section 5588 of the Civil Code. It has been the practice of the court, where a case has been erroneously decided upon a question of law, either to have it reviewed and then overrule it, or, if the same question arises again under a different state of facts, however small the difference may be, to decide differently and distinguish the case decided from the previous one, or in some other way to modify or throw doubt upon it. Whenever this has been done, the later case has been followed by the court and the profession as the true law upon the question. Numerous cases could be cited from our reports in which this has been done. I will content myself with citing a few of them.

In the case of *Roseberry* v. *Roseberry*, 31 *Ga.* 122, it was held that in the trial of a possessory warrant, if the magistrate decided that the defendant was entitled to the property it should be delivered to him upon his giving bond as the statute required. In the case of *Bush* v. *Rawlins*, 80 *Ga.* 586, it was held by this court that where the property was adjudged to be that of the defendant in the possessory warrant, it was not necessary, under the statute, for him to give a bond; and the court in discussing that question said: "We are aware that in the headnote to the case of *Roseberry* v. *Roseberry*, 31 *Ga.* 122, a different view is announced, but the facts of that case show that the point was not made in the case, and it was not necessary to decide the question."

In the case of *Weitman* v. *Thiot*, 64 *Ga.* 16, this court, in ruling upon the statute of limitations as laid down in section 2928 of the Code of 1882, held that it applied to the estates of debtors as well as of creditors. In the case of *Pendleton* v. *Andrews*, 70 *Ga.* 306, the court construed the section differ-

ently, and in the case of *Johnson* v. *Johnson*, 80 *Ga.* 260, the case of *Pendleton* v. *Andrews*, supra, was followed, Bleckley, C. J., saying that the later construction of the section "is undoubtedly correct; and that on which the court acted in ruling *Weitman* v. *Thiot*, 64 *Ga.* 16, is manifestly erroneous."

In the case of *Banks* v. *Hunt*, 70 *Ga.* 741, the court held by way of argument that when the wages of a day-laborer were garnished, it was the duty of the garnishee to pay the fund into court, and that until this was done the question of exemption would not arise. In the case of *Emmons, McKee & Co.* v. *So. Bell Telephone & Telegraph Co.*, 80 *Ga.* 763, it was held that the employer is not bound to pay the fund into court, but that it is his duty to pay it to the laborer even though he had been garnished; and that either the laborer or the garnishee could, after the money was paid to the laborer, assert that it was not subject to garnishment.

In the case of *Hall* v. *The State*, 65 *Ga.* 36, it was decided by this court, in substance, that whenever confessions are about to be given in as evidence, it is the imperative duty of the judge to send the jury out until the preliminary examination is had and the admissibility of the evidence passed upon by the court. In the case of *Woolfolk* v. *The State*, 81 *Ga.* 564, this court said that an examination into the *Hall* case showed that the question was not there made, and what was said by the court in laying down that rule was, therefore, obiter. After the decision in the *Hall* case, every time the State undertook to prove confessions by the accused, the judge of his own motion ordered the jury to retire until he had inquired into the admissibility of the evidence. Since the *Woolfolk* case, the judges have adopted the practice there recommended, of exercising their discretion as to whether they would send the jury to their room. The ruling in *Woolfolk* v. *The State* has been followed by this court since that time.

The reasons given in *Thompson* v. *Spraigue, Soulle & Co.*, 69 *Ga.* 409, for the enactment of the pilotage laws there involved, applied only to cases where the vessel was entering port. In the case of *Meissner* v. *Stein*, 72 *Ga.* 234, a pilot brought a wrecked British vessel into port, where she was sold under a

decree in admiralty, refitted by the purchaser, and given a new name and nationality. When she was about to leave port to put out to sea, the pilot offered his services and they were declined; whereupon he brought suit. This court decided that, as the purchaser had acquired the vessel freed of all liens and as she had changed her name and nationality and was practically a new vessel, the pilot's contention then under consideration could not be sustained on the ground that he had brought in the wreck. As to his other contention it was held, that "the law, as it stands, gives to pilots in ports and harbors the right to compensation for services actually rendered and accepted, but to those cruising outside of the bar it secures compensation for services tendered"; and that therefore the statute did not in this particular apply to outgoing vessels. This question was made in the record, and the ruling made on it was vital to the support of the disposition made of the case. In the case of *Wright* v. *Lake*, 75 *Ga.* 219, it was held that the pilotage acts applied, in this particular, as well to outgoing vessels as to those inwardbound. In the opinion by Blandford, J., it was said that the case of *Thompson* v. *Spraigue, Soulle & Co.*, supra, did not as to the facts decided conflict with this ruling, and that the court was not bound by the argument of that case. The case of *Meissner* v. *Stein*, supra, was said to have decided only that the pilot could not recover under the facts of that case, and that "a judgment upon a similar state of facts is binding, but the argument of a judge, pronouncing an opinion upon a different state of facts, however much the argument may appear to fit the facts of the case being considered, is not binding as a decision."

In *Western Union Telegraph Co.* v. *Blanchard, Williams & Co.*, 68 *Ga.* 299, it was held that a speculation in futures, though it may be illegal, may be invoked to measure the damages occasioned the sender of a telegram by the negligence of the telegraph company in transmitting a message in regard thereto. In *National Bank of Augusta* v. *Cunningham*, 75 *Ga.* 366, it was held, without any apparent reference to the case of *W. U. Tel. Co.* v. *Blanchard, Williams & Co.*, supra, that contracts for the purchase and sale of cotton futures are immoral,

illegal and contrary to public policy ; and that where a broker is privy to such contract and brings the parties together for the purpose of entering into the illegal agreement, he is particeps criminis and can not recover for services or losses incurred by himself in forwarding the transaction. In *Cothran & Co.* v. *W. U. Tel. Co.*, 83 *Ga.* 25, the decision is directly opposed to the doctrine announced in *W. U. Tel. Co.* v. *Blanchard*, it being stated that the principle of that case " has stood virtually over-ruled " since the case of *National Bank of Augusta* v. *Cunningham.*

In the case of *Callaway* v. *Mayor etc. of Milledgeville*, 48 *Ga.* 309, it was held that " a municipal corporation which has, without authority of law, levied and collected a license fee for retailing spirituous liquors, is liable to an action by the party paying the same, for the recovery of the amount of the fee thus paid." It was also there said that an action would lie to recover an illegal tax, if paid. This decision was afterward (*Com'rs of Thomson* v. *Norris*, 62 *Ga.* 541) treated as follows : " The principle ruled there will not be extended beyond cases covered fully by similar facts to those in that case, that is, to cases where the grant of the license for any sum was beyond and without the jurisdiction of the municipal corporation granting it. Where the question is only as to the amount of license fees, and such amount is paid without any compulsory process whatever, we think a distinction can be drawn ; and the principles of justice and the great current of authority demand that the rule in that case laid down be not extended where other facts exist than are in that case, making a different case." See also *City of Savannah* v. *Feeley*, 66 *Ga.* 31, and *McGehee* v. *Mayor etc. of Columbus*, 69 *Ga.* 581. In the latter it was said : " The case in the 48 *Ga.* 309, if it can not be taken out of this stream of adjudications, must be swept away by them. . . It is difficult to reconcile that case with these; yet, as these are in harmony with that current to which allusion is made in 62 *Ga.* 541, they must control rather than that exceptional case." It will be observed that in neither of these cases was the decision in the 48 *Ga.* 309, reviewed and expressly overruled as required in the code.

Among other cases showing much the same practice, see: *Board of Education* v. *Barlow*, 49 *Ga.* 232, *Black* v. *Cohen*, 52 *Ga.* 627, and *Hope* v. *Mayor etc. Gainesville*, 72 *Ga.* 249 ; *Logan* v. *Goodall*, 42 *Ga.* 95, and *Sanford* v. *Sanford*, 58 *Ga.* 261; *Barnes* v. *Underwood*, 54 *Ga.* 87, and *Head* v. *Bridges*, 67 *Ga.* 227 ; *Ingram* v. *Little*, 14 *Ga.* 173, and *Brown* v. *Colquitt*, 73 *Ga.* 59 ; *Johnson* v. *Mayor etc. Americus*, 46 *Ga.* 80, and *Ga. R. R.* v. *Cole*, 73 *Ga.* 715.

Decisions similar to these have been made by the court as now constituted. In the case of *Sanders* v. *The State*, 86 *Ga.* 717, this court, in construing section 4422 of the Code of 1882 in regard to larceny after trust, held that the words "or any other bailee" in that section were ejusdem generis with the other bailees mentioned therein—factors, warehousemen, commission merchants, etc.—and granted Sanders a new trial. One of the reasons assigned for the grant of the new trial was that Sanders was not such a bailee as was described in this section of the code. This was the solemn judgment of a unanimous court; yet, in the case of *Cody* v. *The State*, 100 *Ga.* 105, this court virtually overruled that decision (without in any way or manner reviewing the same as prescribed by the statute), on the ground that the facts of that case did not require that the decision should be put upon that ground, and, further, that the facts did not require such a construction of that section of the code but that the decision in the case turned upon another point.

In the case of *Augusta & Summerville R. R. Co.* v. *City Council of Augusta*, 100 *Ga.* 711, this court held that the reasoning and decision of McCay, J., in the case of *Vason* v. *S. C. R. R. Co.*, 42 *Ga.* 631, and his construction of the act of February 15, 1856, in regard to certain powers granted to the city council of Augusta, were erroneous; and virtually overruled them in construing the same act. The decision in the 42 *Ga.* 631, held that the act of 1856 authorized the city council to permit the connection of all railroads in the city by common tracks, depots, or otherwise, upon such terms and conditions as were fixed by the city council; and the recent decision of this court, construing the same act, holds that the act did not permit the

railroads to connect by running their tracks longitudinally through the streets.

See also the case of *Williamson* v. *Orient Insurance Company*, 100 *Ga.* 791, opinion by Cobb, J., wherein certain portions of the decision in the case of *Pirkle* v. *Equitable Mortgage Co.*, 99 *Ga.* 524, were virtually overruled.

Other cases might be cited to the same effect, but I deem it unnecessary to encumber this opinion with further citations. The cases cited and others show that where the court has made a manifestly erroneous decision on the law and its attention has been subsequently called thereto, it has declined almost invariably to follow the erroneous decision, unless the facts were the same in both cases. It has either modified the erroneous decision, questioned it or distinguished it, and the later decision is thereafter followed. This is especially true where the court has decided that a former decision is not binding, either because of its peculiar state of facts, or because what was said in the opinion was obiter, or because the decision was made under a misapprehension of the facts. These later cases which refused to follow earlier ones have themselves always been followed, being unanimous judgments of the court under the code section above mentioned, and binding upon members of the court.

*Judgment affirmed. All the Justices concurring, except Atkinson and Little, JJ., dissenting.*