## FINKELSTEIN *v.* THE STATE.

105 617
105 627
105 655
105 617
114 544
105 617
f 118 125
118 856
105 617
125 261
126 496

1. Where a purchaser of goods delivers to the seller a bill of money exceeding in amount the price of the goods, intends that the seller shall return the proper change, and the latter accepts the bill for this purpose, but instead of returning the correct change, appropriates to his own use, fraudulently and with intent to steal the same, the bill so received, he is guilty of simple larceny.

2. Where a verdict is not without evidence to support it, this court will not interfere with the discretion of the trial judge in overruling the general grounds in a motion for a new trial.

Argued October 4,—Decided October 13, 1898.

Accusation of larceny. Before Judge Berry. Criminal court of Atlanta. July 9, 1898.

*Goodwin, Westmoreland & Hallman,* for plaintiff in error. *James F. O'Neill, solicitor,* contra.

LEWIS, J. The defendant, by accusation in the criminal court of Atlanta, was charged with the offense of simple larceny, in that she " did wrongfully and fraudulently take, steal and carry away with intent then and there to steal the same, eight dollars and ten cents in money, the property of J. C. Northcutt, and of the value of eight dollars and ten cents." The testimony for the State, in brief, is, that Northcutt went into the store of Mrs. Finkelstein and bought of her goods to the amount of $1.90. He handed her a ten-dollar bill from which to take payment. He claimed that she carried this bill to another part of the store, and placed the same in the money-drawer, and returning, handed him $3.10 in change. He reminded her that the bill he handed her was $10, which was denied, she contending that it was only a five-dollar bill; whereupon she took from her stocking a five-dollar bill, and exhibited it to him as the money she had received from him. In the meantime her husband came, who, learning of the accusation against his wife, seized the prosecutor, and desired to call in a policeman and to have the store searched to see if the ten-dollar bill was therein. An altercation and fight ensued between the husband and Northcutt. No search was made. Defendant, in her statement, denied having ever received a ten-dollar bill, claiming that it was a five-dollar bill paid her, and that she placed the same in her stocking when it was handed her. There was some conflict in the evidence as to whether or not Northcutt was under the influence of whisky at the time. There was proof of defendant's good character by several witnesses. The defendant was found guilty, whereupon she filed a motion for a new trial, which was overruled, and she excepted.

1. The only question of law made by this record is, whether or not the testimony on which the conviction rests makes a case of simple larceny. Section 155 of the Penal Code declares that " Simple theft, or larceny, is the wrongful and fraudulent taking and carrying away, by any person, of the personal goods of another, with intent to steal the same." It is insisted by counsel for plaintiff in error that there was an entire absence of any fraud or deception on the part of the defendant in giving or receiving money, and that in the absence of such fraud there was no larceny,—certainly no simple larceny. This position is based upon the idea that to constitute theft the taking must be fraudulent, and that, if the property lawfully comes into the possession of the accused, under no circumstances can its subsequent appropriation by her be considered larceny. The bare fact of putting one's property in the possession of another does not necessarily deprive the owner of its legal possession. Although personal property may be placed by the owner into the hands of another, yet if its custody is thus given upon condition that there should be at once returned for it its equivalent in value, neither the title to the property nor the right to its possession becomes complete until this condition has been complied with, and the constructive possession as well as the title remains in the owner. Where one, therefore, retains the goods thus received by him and carries them away with intent to steal the same or any part thereof before he has acquired any right of title or possession, he is guilty of theft, and the definition of simple larceny above quoted from the code is broad and comprehensive enough to include such a theft in the general class of simple larceny. It is not denied that such a taking and appropriation of the personal goods of another constitutes some crime, but it was insisted in the argument for plaintiff in error that the crime was that of a cheat and swindler. There is a broad distinction between this case and those in which an indictment for cheat would lie, based upon the fraudulent conduct of one in depriving another of his property. In the latter class of cases it is the intention of the owner to pass the title. There is no larceny. There is a want of an intent to steal, which is of course an essential ingredient

of larceny.   The title passes, and, while one may be guilty of such fraud in acquiring the title as would subject him to punishment as a cheat, yet he can not be said to intend to steal that which the owner intended for him to have.   In the case we are now considering there was evidently no intent that the title to the bill handed by its owner to the defendant should ever pass, except upon condition that the owner should receive back the proper change as agreed upon in the contract of sale touching the articles purchased.   Therefore, when the defendant carried it away with intent to appropriate it to her own use without complying with this condition, she was guilty of stealing what did not belong to her, and to which she even had not acquired a perfect right of possession.

Neither, under the facts of this case, could the charge of larceny after trust be maintained under any definition of that offense in the Penal Code.   If the offense committed falls within any of the provisions of our law on this subject, it must be included in sections 191 or 194 of the Penal Code.  · The former section relates to factors, commission merchants, etc., " or any other bailee, with whom any money, or any other thing of value, may be intrusted or deposited."   In no legal sense was this defendant the bailee of the owner of this money.   There was really nothing entrusted to or deposited with her.   It was a cash transaction.   While, with the consent of the owner, she received his money, yet it was contemplated that the two acts, one of receiving, and the other of paying back something in lieu, should be simultaneous.   There was no delegated trust either to keep the money for any period of time, or to dispose of or use it for the benefit of either of the parties.   In the case of *Sanders* v. *State,* 86 *Ga.* 717, it was held that the words " or any other bailee," in the section cited, should be construed to mean other bailees of like character as those named just above; that is, bailees ejusdem generis.   In *Cody* v. *State,* 100 *Ga.* 105, that decision is criticised; and Chief Justice Simmons, in the opinion delivered by him in the case of *Weaver* v. *Carter,* 101 *Ga.* 213, said that while *Cody* v. *State* virtually overruled the decision in 86 *Ga.,* yet it was without in any way or manner reviewing the same as prescribed by the statute.   However, in

*Belt* v. *State,* 103 *Ga.* 12, the decision in *Cody* v. *State,* is approved, and the opinion of Judge Lumpkin in 86 *Ga.* 717 is treated as mere obiter. But neither of the above cases is in conflict with our ruling in this case, for in *Cody* v. *State* and in *Belt* v. *State,* thero was evidently a *delegated trust.* There was not simply an exchange of property, involving acts by each party which were intended to be simultaneous, but the propperty was intrusted to the defendant for the purpose of holding and keeping it for the benefit of the bailor. In Bishop's New Criminal Law (vol. 2, § 812, 2d div.), it is said, " If the owner of a coin passes it to a person who is to take it out and get it changed, this one becomes neither a bailee nor otherwise in possession."

The proposition that simple larceny of goods may be committed by a person even if he acquires the lawful possession thereof, where there is no intention of the owner to part with the title, is sustained by abundant authority, both in the textbooks and in the decisions of numerous courts of last resort in this country. We quote the following from 12 Am. & Eng. Enc. of Law, p. 768 : "The mere delivery of property to another for a special purpose vests in the person receiving it only the temporary charge or custody; the possession of the property remains in the owner, and a conversion of it is larceny, as in case of the delivery of money by the owner to another for the purpose of having it changed into other money of a different denomination." In Bishop's New Criminal Law (vol. 1, §583), it is declared: "If one fraudulently, to steal another's goods, prevails on the latter to deliver them to him in a way to pass the property therein, he commits by this taking neither larceny nor any other crime, unless the transaction amounts to an indictable cheat. But if the permission extends to the possession only, and he takes and converts the whole to himself, he becomes guilty of larceny; because, while his intent is thus to appropriate the property, the consent which he fraudulently obtained covers no more than the possession." Again, in volume 2 of the same work (§815, 2d div.), it is declared: "If, on a sale of goods, the seller contemplates no credit, but the purchaser secretly purposes appropriating them to himself without paying,

a delivery will not prevent the fraud being larceny; otherwise, if there is a credit." See also sections 816 and 817, giving instances where theft in the exchange of money, similar to the present case, is held to be simple larceny. In Rapalje on Larceny and Kindred Offenses, §3, is the following text: "So, one who, on receiving a bill to be changed, puts it in his pocket with the fraudulent intent of converting it to his own use, and who refuses to deliver the change on demand, is guilty of larceny." Hildebrand *v.* People, 56 N. Y. 394, is a case so exactly in point that we quote its entire headnote: "Upon the trial of an indictment for larceny it appeared that the prosecutor handed to the prisoner, a bartender, a fifty-dollar bill, to take out ten cents in payment for a glass of soda; the prisoner put down a few coppers on the counter, and, when asked for the change, put the prosecutor out of doors and kept the money. Held, that the prosecutor did not part either with the possession of or property in the bill, but, until the change was given back, the delivery was incomplete, and the bill remained, in legal contemplation, under his control and in his possession, and that larceny could be predicated upon the facts stated." On the same line, and sustaining the same principles, are the following cases: Justices etc. *v.* People, 90 N. Y. 12; Farrell *v.* People, 16 Ill. 506; Walters *v.* State, 17 Tex. App. 226; Commonwealth *v.* Barry, 124 Mass. 325; Murphey *v.* People, 104 Ill. 528. See also 46 Central Law Journal, p. 452, where a number of authorities to the same effect are cited in a note attached to the case of People *v.* Martin, recently decided by the supreme court of Michigan. Authorities might be multiplied almost indefinitely, but the above, with the numerous citations which they embrace, are quite sufficient to be given in this opinion.

The case of *Jones* v. *State*, 97 *Ga.* 430, is relied on by counsel for plaintiff in error to sustain the position that this was a case of being a cheat and swindler, and not of larceny. The marked distinction, however, between that case and the one at bar is, that there was an intention on the part of the little girl to pass to the seller title to the coin which she delivered to him in payment for the goods. On page 431, Justice Lumpkin, in the opinion, says: "The artful practice and the deceitful means which he employed

consisted in adopting the necessary precautions to keep her in this belief [that is, that the coin she was passing was a silver dollar], and thus enable him to obtain the valuable coin and satisfy her with the inadequate sum given back in change." She intended to pass the title to the twenty-dollar gold piece if seventy-five cents were returned to her.  In her mind the delivery of seventy-five cents to her was all that she required as a prerequisite to parting completely with both possession and title to the gold coin.  She did not expect to get $19.75, or know that she was entitled to this amount, and accordingly there was no intention or purpose on her part to reserve title or right of possession of the coin until she actually got the amount of change which was really proper, viz. $19.75.  In the present case there is an absence both of the intent to pass title, and also of any fraudulent practice whereby the title was acquired.  *Crofton* v. *State,* 79 *Ga.* 584, is cited to sustain the position that this is a case of larceny after trust, rather than simple larceny.  It appeared in that case, however, that the defendant was actually intrusted with ninety-five cents and a newspaper belonging to the owner of the money, for the purpose of carrying the same to another party and having returned to him one dollar, thus effecting a sale of his paper for five cents.  It might with plausibility be argued that there was a delegated trust in the defendant who was charged with the disposition of the property entrusted to him for the benefit of the owner.  It will be seen, however, that the question as to whether or not the facts in that case constituted simple larceny was not raised at all.  There was a contention that the offense constituted larceny from the person.  The main issue passed upon by the court was whether or not there was any fatal variance between the proof and the allegations in the indictment.  On the other hand the case of *Harris* v. *State,* 81 *Ga.* 758, makes a much stronger case than the one at bar, either of being a common cheat and swindler, or larceny after trust.  There the defendant procured the goods of the owner under the false representation that he was instructed by another party to purchase them.  After receiving the goods he appropriated them to his own use.  This court held that the facts sustained the charge of simple larceny.  In the case at bar

the point was not made or argued that there was a variance between the accusation and the proof because the former charged the larceny of $8.10, and the evidence shows that the thing stolen, if anything, was a ten-dollar bill.. We think the larceny, if any was committed, consisted really in stealing the ten-dollar bill, and not simply that portion of the change to which the owner was entitled and which he failed to receive.  In the case of Walters *v.* State, 17 Tex. App. 226, the defendant was charged with a felony, to wit, stealing $20, and the proof showed that $1 in change was given back by the defendant to the prosecutor.  Defendant contended that conviction should not be maintained for an offense higher than a misdemeanor, theft of an amount under $20 being a misdemeanor under the statute. It was held that this contention was not good, that the larceny was really of the $20 bill.  We do not mean to say, however, that such a variance would have been fatal, and that even if the point had been made we would have felt constrained to sustain the same.  This point was not only not made, but counsel for plaintiff in error treated the case in the argument as if the amount of money was properly stated in the indictment.  The only legal proposition presented was whether the facts made simple larceny or some other crime.

2. The question of an intent to steal in this case was one for the jury, and we can not say, in the light of the record, that the evidence was insufficient to support their finding.  The jury accepted the testimony of Northcutt, the main witness for the State, rather than the statement of the defendant, notwithstanding the evidence of her good character.  If Northcutt told the truth, there was enough to infer criminal intent; and we do not feel authorized to interfere with the discretion of the trial judge in overruling the motion for a new trial.

*Judgment affirmed.   All the Justices concurring, except Little and Fish, JJ., dissenting.*