KIRK vs. THE STATE OF GEORGIA.

1. The verdict was not contrary to law and the evidence, and there was no abuse of discretion in refusing a new trial on that ground.

2. Where the admission of evidence is complained of, the ground of objection thereto should be stated, in order to raise a question on which this court can pass.

(a.) On a trial for murder, an indictment against the defendant for retailing liquor without license, on which the names of the deceased and members of his family were marked as witnesses, was admissible for the purpose of showing motive and to corroborate the dying declarations of the deceased that the true bill was the cause of his being killed.

3. Where a bailiff in charge of a jury in a criminal case left them unattended in the street for two or three minutes, and during that time some of them separated from their fellows, generally the presumption that it was detrimental to the accused would prevail, and would necessitate a new trial; but where two of the defendant's counsel knew of these facts, and did not bring them to the attention of the court until after verdict, as a ground of a motion for new trial, such ground would not be good.

(a.) Where one ground of a motion for new trial was that the bailiff slept in the room with the jury each night they were out during the trial, but it did not appear that they were out at night after the judge's charge was given, and while they were deliberating upon their verdict, or that the bailiff was in their room during their deliberation, or that, when he was there, he conversed with them upon the case or upon any other subject contrary to his duty, a new trial will not be required. In the absence of any proof, the presumption would be in favor of the legality of the bailiff's conduct.

(b.) All officers are presumed to have discharged their sworn official duties.

4. Where evidence which may have been irrelevant was admitted, but afterwards withdrawn, in the absence of anything to show the contrary, it will be presumed that such evidence was not after-

wards insisted upon or alluded to, and that its withdrawal was accompanied with proper instructions from the court in relation to it; and it will not be presumed that its temporary admission injured the defendant.

5. Evidence that immediately after the deceased was shot, a person near by halloed and asked him what was the matter, and who had shot him, to which he replied that the defendant had shot him, was admissible both as part of the res gestæ and as corroborating the dying declarations of the deceased.

6. There was nothing in the ground of the motion in relation to permitting counsel to discuss objections to the evidence in the presence of the jury. No request was made to have the jury removed, and no ruling was made on that subject; and besides, this was not evidence that required a preliminary hearing to determine its admissibility, and does not fall within the rule laid down in Hall vs. State, 65 Ga., 36, and in McDonald vs. State, 72 Ga., 55.

7. Newly discovered evidence, the only object of which is to impeach a witness for the state, will not cause a new trial.

November 11, 1884.

Evidence. Criminal Law. Jury and Jurors. Practice in Supreme Court. Presumptions. Res gestæ. Newly Discovered Evidence. Before Judge BRANHAM. Polk Superior Court. February Adjourned Term, 1884.

In this case, the charge of the court and the decision sufficiently report the points made. The charge was as follows:

" Gentlemen of the Jury—Under our Code, the punishment of a person convicted of murder shall be death, but may be confinement in the penitentiary for life in the following cases : If the jury trying the case shall so recommend, or if the conviction is founded solely on circumstantial testimony, the presiding judge may sentence to confinement in the penitentiary for life. In the former case, it is not discretionary with the judge; in the latter, it is. If you should find the defendant guilty generally under the indictment, it would subject him to capital punishment. If you should find the defendant guilty, and add to your verdict, 'and we recmomend that the defendant be imprisoned in the penitentiary for life,' it would be obligatory on the court. I would be obliged to conform to your recommendation, and could not sentence the defendant to capital punishment.

"You are the judges of the law and facts. You take the law from the court and the facts from the witnesses, apply one to the other, and weigh them, and make up a general verdict accordingly.

"In all criminal cases, the defendant has the right to make his statement to the jury, not on oath; and you are authorized to give to it, or any part of it, just such force as you see proper. You may believe it in part, you may reject it in part; you may believe it altogether in preference to the sworn testimony in the case, or you may reject it altogether. The language of the law is that you may do either one or the other of these things; not that you must do it. You are to give to it just such force as you see proper to give it, or as you see proper to give any part of it. ·

"In all criminal cases, the defendant's guilt must be established beyond a reasonable doubt. The doubt must be pertinent to the matter in issue. It must arise out of the evidence, or for the want of sufficient evidence. Juries, in their judgment in criminal cases, occupy the same position as other searchers after such, with but one exception: the presumption is in favor of innocence, and the guilt of the defendant must not be doubtful; but the rules of belief and the grounds of confidence are the same as in other cases, and the principles of common sense are just as controlling as in other cases. If, after you have examined all the evidence in this case and the statement of the defendant, your minds are unsatisfied, unsettled, wavering, and you cannot, as honest men, viewing this transaction as you do any other ordinary transaction, come to a conclusion, beyond a reasonable doubt, that the defendant is guilty, you ought to acquit him; but if the evidence shows, beyond a reasonable doubt, that the defendant is guilty, it is your duty to convict him.

"In so far as the guilt of the defendant depends on circumstantial evidence alone, the rule is that each separate fact or link which goes to make up the chain of circumstances from which the deduction of guilt is sought to be drawn must be clearly proven, and a fact not clearly proven should not be considered as a part of the chain of circumstances, but should be rejected by the jury; and the circumstances proven must not only be consistent with the defendant's guilt, but they must exclude every other reasonable hypothesis than that of the defendant's guilt.

"Now if any one or more circumstances relied on by the state are not clearly proven, and for this reason you reject one or more of the circumstances relied on, then you will inquire whether the remaining circumstances proven, if they are clearly proven, are consistent with the defendant's guilt, and inconsistent with any other reasonable hypothesis than that of the defendant's guilt. All essential facts and circumstances necessary to show the commission of the crime, and to connect the defendant therewith as the party committing the act, must be proven.

"If a witness knowingly swears to a falsehood in one particular, he is unworthy of belief in any particular. If he swears to a falsehood by mistake, it goes to his credit.

"In case there is a conflict of testimony, if you can reconcile it upon any reasonable theory, so as to make all the witnesses speak the truth and impute perjury to no one, it is your duty to do so. But if you cannot so reconcile the testimony, you are to believe that which is the most reasonable and credible to you. In reaching your conclusion, you will not view detached portions of the testimony alone, but look at the whole of it, and consider it all; consider the testimony of all the witnesses sworn in the case; the state of feeling of the witnesses; the relationship, or the absence of relationship, of each of the witnesses to any of the parties to or connected with the transaction; the interest or want of interest on the part of any witness sworn, if any such things exist; the manner of the witnesses on the stand; the character of each witness and his opportunity to know the facts about which he testifies. And you will also consider the statement of the defendant, the dying declarations of the deceased, and his statements made immediately after it is said he was shot, under the rule which I shall hereafter give you in charge.

"A witness may be impeached by disproving the facts testified to by the witness, or by proof of contradictory statements previously made by the witness as to matters relevant to his or her testimony and to the case, or by evidence, or to the general bad character of the witness.

"An impeached witness may be sustained by proof of general good character, the effect of the evidence to be determined by the jury. The jury may consider the evidence of an impeached witness, especially if it is in harmony with the truth and corroborated by other testimony; and although a witness may be impeached by other witnesses, and may not be afterwards corroborated, yet it is a question for the jury to determine whether the impeachment of the witness has been successful, and whether the witness is to be believed: As to how far the credit of an impeached witness may be restored depends much upon the nature as well as the extent of the corroborating testimony, and whether they are corroborated as to the main rather than as to the immaterial facts. You are the exclusive judges of the weight of the evidence and the credibility of the witnesses sworn on the trial. And you are authorized to take into consideration the testimony of all the witnesses *pro* and *con* as to the general character of any witness sworn in the case, in connection with all the evidence before you, in deciding whether such witness has been impeached or sustained, and what weight or credit you will give to his or her testimony. And you are authorized to take into consideration the testimony of all the witnesses *pro* and *con* as to the general character of the deceased, Dick Ratchford, in connection with all the evidence in the case, in deciding what credit and weight you will give to his dying declarations, and to any statements he may have made immediately after he was shot. The same rules which apply to the impeachment

of witnesses, to sustaining and corroborating them, apply with equal force to the deceased, Dick Ratchford's dying declarations and statements; for his dying declarations and statements, admitted in evidence as a part of the *res gestæ,* stand upon the same plane that they would occupy if they had been sworn to in open court. You are the exclusive judges of the weight and credit of Ratchford's dying declarations, and of any statements he may have made immediately after he was shot.

"Some testimony has been admitted in reference to what the witness, Mrs. Wood, is alleged to have said, on the commitment trial, of the defendant, about her husband's coming to Cedartown on the day of the homicide. What Mrs. Wood said in relation to this isolated fact was not material to the issue, unless the movement of her husband on that day was, in some way or other, connected with the crime; and a contradictory statement as to that matter alone would not of itself be sufficient to impeach her, unless the movement of her husband was on that day, in some way or other, connected with the crime.

"Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of the *res gestæ.*

"What the deceased said, if anything, immediately after he was shot, if it sprung out of the main transaction and elucidates it, was voluntary and spontaneous, and made at a time so nearly connected therewith, and under such circumstances as to be free from all suspicion of device or afterthought, is competent evidence, and shall be considered by the jury, in connection with all the other evidence in the case, in making up their verdict. If what the deceased said, if he said anything, was not said immediately after he was shot, or at a time so nearly connected therewith; if it was not voluntary and spontaneous, and made under such circumstances as to be free from all suspicion of device or afterthought, it would not be competent evidence, and it should not be considered by the jury, but it should be rejected and treated as no part of the evidence.

"Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death, and the person who killed him, are admissible in evidence in a prosecution for the homicide.

"As to any dying declarations, you are to determine, before you are authorized to consider them as a part of the evidence in the case, whether such declarations were conscious utterances of the deceased made in the apprehension and immediate prospect of death, and in the article of death. If they were so made, then they stand on the same plane of solemnity as statements made under oath, and you would be authorized to consider such declarations, so far as they relate to the cause of his death, and the person who killed him, as a

part of the evidence, in connection with all the other evidence in the case, in making up your verdict.

"Dying declarations should be received and considered by the jury with great caution. If such declarations were made, it is your duty to consider the character of the deceased, all the circumstances under which they were made, the mental and physical condition of the deceased at the time, whether the deceased stated a mere conclusion of his own mind or the facts of the case, whether his statement was full or only a partial one, and after considering all the attending circumstances, determine for yourselves the credibility and weight of this part of the testimony.

"The defence of *alibi* rests on the proposition that it was impossible for the prisoner to have been at the scene of the crime, because he was elsewhere. Unless he makes out the impossibility to the reasonable satisfaction of the jury, his defense, so far as this feature of it is concerned, is a failure. The proof must have such range as to time and place that it would be out of the power of the prisoner to have been where the proof of *alibi* places him and also at the scene of the crime. If the defendant has submitted proof, which you find under the rule to be insufficient to establish an *alibi* as such, still the proof submitted on this branch of the case may be considered by the jury, in connection with all the other evidence in the case, in deciding whether the defendant's guilt has been established beyond a reasonable doubt; for you are to consider all the evidence before you in making up your verdict.

"Confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction; but a confession, corroborated by a credible witness, or by other satisfactory circumstances, would justify a conviction. You will find whether, from the evidence, any confession or confessions were made by the defendant. See what he said, what words were used, under what circumstances they were used, and to what they related, and what the defendant meant thereby. Consider what was said by the defendant, if anything was said, with great caution, in connection with all the other evidence, and determine for yourselves the value and weight thereof.

"Murder is the unlawful killing of a human being, in the peace of the state, by a person of sound memory and discretion, with malice aforethought, either express or implied.

"Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

"Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart.

"If the defendant unlawfully, with malice aforethought, either ex-

press or implied, shot and killed the deceased, he would be guilty. If he did not so shoot and kill him, he would not be guilty.

"The court does not express or intimate any opinion as to what has, or has not, been proven. You will take into consideration all the evidence before you, and determine therefrom whether the defendant is guilty or not guilty of the crime charged in the bill of indictment.

"The form of your verdict will be, as you find the facts, either, 'We, the jury, find the defendant guilty,' which would subject him to capital punishment; or, 'We, the jury, find the defendant guilty, and recommend that he be imprisoned in the penitentiary for life'—in that event the defendant could not be executed; or, 'We, the jury, find the defendant not guilty.'

"You may retire and make up your verdict."

Ivy F. Thompson · James Glenn, for plaintiff in error.

C. Anderson, attorney general; J. I. Wright, solicitor general, by T. W. Alexander, for the state.

Hall, Justice.

George Kirk was indicted, tried and found guilty of the murder of Dick Ratchford, at the August adjourned term, 1883, of Polk superior court, and was sentenced to imprisonment in the penitentiary for life, in accordance with the recommendation of the jury that passed upon his case. He made a motion for a new trial on various grounds, which was overruled, and the case is here upon a bill of exceptions and writ of error, to review the judgment overruling this motion.

1. We cannot say, after a careful review of this testimony and an able and exhaustive argument upon the question, that there was not sufficient evidence to sustain the verdict of the jury, or that it was contrary to law. The experienced and able judge who presided at the trial was satisfied with the result, and seems to have exercised the discretion vested in him by law with becoming care and prudence. We can perceive nothing that should lead to the conclusion that it had been abused, and are therefore precluded, under the many rulings of this court, from interposing to control it.

2. Complaint is made in the 3d ground of the motion for a new trial, that the court committed error in admitting in evidence, over defendant's objection, a bill of indictment against the accused for retailing liquor without a license, on which the names of Dick Ratchford, the deceased, and Ailsey and Anna Ratchford were marked as witnesses. The ground of objection to this testimony is not disclosed by the record, and this, of itself, would be sufficient cause for refusing to consider it here. The decision complained of is pointed out, but the error in it is not plainly specified. General objections to testimony make no questions upon which this court is required to pass. Apart from this, however, we can discern good reason for the admission of this evidence. It furnished a motive for connecting the accused with the commission of this crime, and corroborated a portion of the dying declaration of the man who had been slain, in which he said, " that true bill was the .cause of his being killed."

3. The 4th and 8th grounds of the motion relate to the jury being left alone and unattended by the bailiff in the streets of Cedartown, while he went on an errand for one of them to the courthouse. He was absent from them only two or three minutes, and during that interval, it is charged. that a portion of them separated from their fellows. This. occurred pending the trial. The fact of their separation and of the bailiff's failure to attend them is made to appear,. and generally the presumption that it was detrimental to the accused would prevail, and would necessitate the grant of a new trial. In this instance, however, the facts were discovered by two of the counsel of the defendant during the progress of the trial, and at the time of their occurence, and they failed to bring them to the notice of the court until the conclusion of the case, and until a motion for a: new trial was made. That such an omission is fatal to this ground of the motion has been often decided. *Cannon vs. Bullock*, 26 *Ga.*, 432 ; *Carter's* case, 56 *Id.*, 467 ;. *Eberhart's* case, 47 *Id.*, 607.

In connection with the foregoing, we will consider the further irregularity complained of, that the bailiff slept in the room with the jury each night they were out during the trial. It does not appear from the record that they were out at night after the judge's charge was given to them and while they were deliberating upon their verdict, or that the bailiff was in their room during their deliberations; neither does it appear that, when he was there, he conversed with them upon the case or upon any other subject contrary to his sworn duty, and without affirmative evidence to either of these facts, it would be going too far to hold that this was cause for setting aside the verdict and ordering another hearing. The decisions of this court have never gone to this length. *Doyal's* case, 70 *Ga.*, 135, 151, in which the previous decisions upon this question are examined and approved. It would violate all principle to presume, in the absence of proof to that effect, that an officer of the law, however humble his station, had acted in violation of his sworn duty; unless proved to the contrary, it will always be presumed in his favor that he has discharged his duty. Code, §§3752, 3753, 3754. All officers are presumed to have discharged their sworn official duties. 1 Kelly, 3; 36 *Ga.*, 442; 39 *Id.*, 22. Besides, there are affidavits of jurors repelling any presumption that arises from the alleged misconduct of the bailiff in this particular; in these it is shown that no one conversed with them about the case.

While it is essential to the protection of the accused to require a strict performance of duty from sheriffs and bailiffs charged with the custody of juries in this respect, yet it would defeat the ends of justice to interpose for every trifling and immaterial irregularity of conduct in this regard and make a pretext for setting aside verdicts. To this length we are not disposed to go.

4. The 5th ground of the motion for a new trial complains of the admission of a bill of indictment against one Wiley Alred, who was not a party or witness in this case,

but who was a brother-in-law of the defendant, and on which the name of the deceased, Dick Ratchford, was endorsed as a witness. What the objection to the admission of this evidence was does not distinctly appear, but we are authorized to infer from the facts that it was objected to because it was irrelevant; and while we are not prepared to say that this objection might not possibly have been good, yet it appears that the evidence, after being admitted, was withdrawn from the jury, and it must be presumed, in the absence of a contrary averment, that it was not afterwards insisted upon or alluded to, and that its withdrawal was accompanied with proper instructions from the court in relation to the right of the jury to attach importance to it. Under these circumstances, it is not an indispensable presumption that its temporary admission was injurious to the defendant.

5. The next exception to the ruling of the court is embodied in the next ground of the motion for a new trial, and relates to the testimony of Ailsey Ratchford, which was admitted over the general objection of the defendant, who swore, " that as she was towards Dick," immediately after he was shot, as we must conclude from its connection with other facts in proof, " she halloed and asked him what was the matter, who had shot him, and he answered George Kirk ;" and this he repeated after she got to him. This testimony was so nearly coincident in point of time with the shooting, as to form a part of the transaction, and was admissible as a portion of the res gestæ. The *Augusta Factory vs. Barnes*, 72 *Ga.*, 217. Besides, it was, when first offered, ruled out, and was afterwards admitted, to corroborate the dying declarations of the deceased. That it had this effect, we think, is evident; but we are of opinion that it should have been admitted when originally tendered. It was proper both as part of the *res gestæ* and as corroborative of the dying declarations.

6. There is nothing in the grounds taken in the motion in relation to permitting the counsel to discuss objections

to evidence in the presence of the jury. No request was made to have the jury removed, and the court made no ruling upon this subject. This was not evidence that required a preliminary hearing to determine its admissibility, and does not fall within the rule laid down in *Hall's* case, 65 *Ga.*, 36, and followed in *McDonald vs. The State*, 72 *Ga.*, 55.

7. The newly discovered evidence, as set forth in the affidavit of Lazarus Powell, could not authorize the grant of a new trial. Its only object being to impeach one of the state's witnesses by contradictory statements made by her since the trial. *Doyal's* case, *ut supra*.

Judgment affirmed.