## 29773. KNIGHT v. CAUSBY.

DECIDED NOVEMBER 17, 1942.   REHEARING DENIED DECEMBER 15, 1942.

574

*Maddox & Griffin,* for plaintiff.

*Y. A. Henderson,* for defendant.

GARDNER, J. 1. Under the pleadings and the evidence, the issues which came up for consideration and decision by the court and jury may be stated as follows:

(a) Was the first contract between the plaintiff and the defendant, entered into on October 4, 1939, superseded by the second contract entered into on October 6, 1939, between the plaintiff and the defendant of the one part and Jackson's Dairy of the other part? We will first address ourselves to this question for the reason that the trial court allowed evidence on it and submitted it to the jury, and the jury found this issue against the plaintiff. Did the judge commit error in so doing and was the finding of the jury unauthorized? It will be noted that the first contract was dated October 4, 1939, and was not to become operative until November 4, 1939. It provided that beginning November 4, 1939, not less than 50 gallons of raw milk daily were to be delivered, and the amount was to be gradually increased to 100 gallons by January 4, 1940. It further provided that not less than 100 gallons per day were to be delivered from January 4, 1940, to January 4, 1941; whereas, the Jackson's Dairy contract, which was executed two

days later, became operative on October 6, 1939, twenty-eight days earlier than the first contract. This contract provided for a 50-gallon daily delivery of milk to January 1, 1940, terminating three days earlier than the period specified in the first contract. The Jackson's Dairy contract provided for an increase in delivery after January 1, 1940, to approximately 75 gallons of sweet milk daily until January 1, 1941, terminating three days earlier than the first contract. It is the contention of the plaintiff that the court should have construed the contracts, and that this construction should have been to the effect that the Jackson's Dairy contract was in part compliance with and in contemplation of the provisions of the first contract, and that it did not supersede the first contract. It is the duty of the court to construe contracts unless they are ambiguous, in which event parol testimony may be admitted for the purpose of ascertaining the intention of the parties. See Code, § 20-704; *Tarbutton* v. *Duggan,* 45 *Ga. App.* 31 (7) (163 S. E. 298). In our opinion the variance as to dates when the two contracts were to become operative and as to the differences in quantities of milk to be delivered under the different periods of the two contracts, the differences in the dates of termination, and the singular instead of plural being used as to "any purchaser . . said purchaser," were sufficient, under the facts of this case, to authorize the court to submit this issue to the jury and admit evidence thereon. Without detailing the evidence here, it was sufficient to sustain the finding of the jury that in executing the Jackson's Dairy contract the parties intended that it should supersede and nullify the first contract. The defendant so testified. Such may be inferred from the provisions of the two contracts, and the conduct of the parties and circumstances in the case as revealed by the evidence.

(b) The controversy regarding the additional milk as represented by the difference in gallonage specified in the first contract and in the Jackson's Dairy contract is eliminated by the opinion dealt with in division (a) above. At any rate, the jury was authorized to find on this issue that the plaintiff did not procure a purchaser for this additional amount of milk.

(c) This brings us to a consideration of whether the jury was authorized to find that the defendant complied with the Jackson's Dairy contract. It is admitted that a daily average of 36 gallons instead of 50 gallons was delivered under this contract for the first

period, and a daily average of 73 gallons instead of 75 gallons was delivered for the second period. This contract contained the following provisions: "It is further agreed between the parties that in the event of strikes, or other act, or acts, over which the parties hereto have no control, preventing the delivery or acceptance of milk, a strict compliance will not be required of either party hereto." The evidence reveals that the plaintiff, in order to earn the 8 cents per gallon commission, was to receive the milk from Causby's Dairy and deliver it to Jackson's Dairy. For about sixty days in the early part of 1940 the weather conditions were such that Causby was forced to take his lighter truck and carry the milk a considerable portion of the distance from his dairy to Jackson's dairy, at great expense. During the other period of the contract Knight received the milk from Causby's dairy and delivered it. Causby testified that Knight never demanded any more milk; that, as a matter of fact, on certain occasions Jackson's Dairy asked that the quantity of milk being delivered be reduced; that this was done without any protest from Knight; that Knight, without making any complaint, was satisfied with the amount of milk delivered, and never said anything concerning the quantity which was being delivered until after he refused to renew the contract with Knight; that, at one period of the time, Causby lost cows from disease, and could not deliver the quantity of milk called for by the contract, but that the plaintiff demanded no more than he, Causby, could deliver; that also, during certain parts of the contract period, defendant delivered several gallons of the milk per day to defendant's brother, and that this also was agreeable to Knight. The plaintiff testifying, on the other hand, denied most of these contentions, and stated that he was continually asking the defendant to increase the quantity of these deliveries to the amount specified in the contract, and the defendant claimed that he could not do it; that his undertaking to deliver the amount of milk called for by the contract was the first time in his life that he had been unable to comply with an obligation.

It would seem that all of these controversial issues were resolved by the jury in favor of the defendant, and we can not say as a matter of law, under all of the evidence, that there was not sufficient evidence to sustain the finding. The court did not err in overruling the general grounds of the motion for new trial.

2. Ground 1 of the amended motion assigns error because the court, over objection of the plaintiff, while the plaintiff was testifying, allowed counsel for defendant to inquire of the witness what construction the witness placed on the following clause in the contract: "It is further agreed between the parties that in the event of strikes, or other act, or acts, over which the parties hereto have no control, preventing the delivery or acceptance of milk, a strict compliance will not be required of party hereto." Counsel asked the witness: "What did you mean by that particular part?" The defendant's attorney made the following objection: "We object to that on the ground that the contract set up what is meant. They haven't set up anything that will take it out of the contract." The Court: "I will let him state what construction he places on it. . . Just tell Mr. Knight why that was put in the contract and who suggested it?" The witness: "Well, if I understand that right, it was to mean if anything was to happen they might not want the full amount." The objection argued that the contract spoke for itself. Our opinion is that it was legitimate for the court to permit the witness to give his interpretation of the intention of the parties as to why this clause was inserted.

3. Ground 2 complains because the court permitted the defendant to testify that the Jackson's Dairy contract was executed, delivered, and accepted in full satisfaction of the first contract. In view of what has been said in the first division of the opinion, this was not error.

4. Ground 3 complains because the court permitted the witness Beamer, a milk producer, to testify that the witness had approached Kirton with a view of selling milk to Kirton's Dairy, and that Kirton informed the witness that Kirton's Dairy was not in the market for milk. The objection was that the evidence was irrelevant and immaterial. From all of the facts of the case we think this objection was well taken, but, for reasons set out in the first division of this opinion and for other reasons, the error in admitting the evidence was not of sufficient gravity to demand a reversal.

5. Ground 4 complains because of the admission of the testimony of the same witness relatively to the disposition of milk to a cheese factory. The ruling on this ground is controlled by what has been said in regard to ground 3.

6. Ground 5 assigns error on the following charge of the court: "I charge you, gentlemen, that if you find from the evidence in this case, that the defendant complied with the terms of the contract entered into between the defendant, G. C. Causby, and Jackson's Dairy and John T. Knight, by delivering . . ; that the amount of milk so delivered, you find it to be approximately the amount of the contract of the defendant and Jackson's Dairy and John T. Knight, that is, whatever amount you find during the time of the contract to be 50 gallons, if you find that the amount delivered was approximately that, and you further find that the plaintiff made no other demand on Causby for any additional milk, then I charge you that you would not be authorized to return a verdict against the defendant, but if you find that state of facts to exist, your verdict should be in favor of the defendant." Error is assigned for the following reasons: (a) It was confusing to the jury. (b) Because this procedure left to the jury the construction of the contract. (c) Because it led the jury to believe that if defendant did not deliver approximately 50 gallons of milk daily to Jackson's Dairy, and plaintiff made no other demands on defendant for additional milk, it was the duty of the jury to find in favor of the defendant. (d) Because, in so charging, the court instructed the jury in effect that if the jury found that defendant had complied with the Jackson's Dairy contract the jury should return a verdict in favor of the defendant, thereby ignoring the 25 gallons a day to be delivered from January 1, 1940, to January 4, 1941, specified in the contract of October 4, 1939. (e) Because said charge ignored the evidence to the effect that defendant did not have sufficient milk to comply with the Jackson's Dairy contract, and because it confused the jury into believing that the plaintiff could not recover unless the plaintiff demanded delivery of the milk specified in the contracts. (f) Because the court instructed the jury that they might find for the defendant, when as a matter of fact and law the evidence demanded a finding in some amount for the plaintiff, since as a matter of law 36 gallons per day do not approximate 50 gallons per day, and because the deliveries should be considered on a daily basis and not on an average daily basis during the period of the contract. That the evidence showed that on some days as little as 8 gallons per day were delivered, and on only 18 days during the period to January 1, 1940, were 50 gallons

delivered, and that for this reason the charge confused the jury.

We have carefully studied this excerpt and the assignments of error on it in the light of the entire record. When so viewed we do not think, (a) that the charge was confusing; (b) that it is subject to the criticism that it left to the jury the construction of the contract; (c) that, under the facts of this case, even though plaintiff had a contract for the delivery of 50 gallons of milk per day, if he received a less amount in satisfaction of the contract, this he had a right to do. The plaintiff had a perfect right to waive the delivery of the whole or any amount, under the contract. What is said in division 1 of this opinion covers objections (d), (e), and (f).

7. Ground 6 complains of the following charge: "I charge you that if you find under the evidence in this case that the defendant, G. C. Causby did not deliver to the plaintiff approximately the amount of milk contracted to be delivered for delivery to Jackson's Dairy, then you would return a verdict in favor of the plaintiff for the amount, at 8 cents per gallon, that you find he failed to deliver under the contract." (a) Error is assigned because the court instructed the jury to make computation of the milk delivered on a daily average for the period of the contract, when it should have been computed per day. The plaintiff's pleadings set up a daily average for the period of the contract. He did not plead, and the case was not tried, on actual daily delivery. In view of the pleadings and the evidence, we do not think that the defendant should now be allowed to change his own method of computation as set out in his pleadings. (b) Complaint is made because the court did not define the word "approximately;" and that the difference in the quantity contracted to be delivered and that which was actually delivered was so great as to show a variance of the contract as a matter of law. When we view the whole charge and the evidence, we find no merit in this contention. There was no request to charge in more detail on this issue. While this excerpt, standing alone and applied to a certain phase of the case, may appear erroneous, it is not so when viewed in the light of the whole record.

8. Ground 7 complains of the following excerpt from the charge: "The fact that a contract was entered into prior to January 4, 1940, was for less than 100 gallons of milk, would not re-

lease the defendant from the terms of the contract with the plaintiff for 100 gallons, unless you should find that under the evidence it was contemplated at the time by the parties that the execution of the second contract would operate to discharge the first contract." The errors assigned upon this charge are (a) because there is no evidence to warrant this charge; (b) there are no pleadings to sustain the charge; (c) because it left to the jury the construction of the contract; (d) the charge did not follow the evidence or the pleadings. In view of what has been said hereinbefore there is no merit in any of these assignments.

9. Ground 8 complains, "Because upon the trial of said cause and after the same had been completed, and the jury had been instructed by the court and had retired to their jury room and had deliberated in excess of two hours, that the presiding judge announced that a recess would be taken for the noon hour for lunch, and excused all parties, jurors and attorneys attending said court, for said purpose, and thereafter the said presiding judge instructed the officer in charge of said jury to permit said jury to disperse for lunch, and in accordance with said instructions and with the instructions of the trial judge, that said jury did disperse for lunch, returning to said court room and said jury room approximately one hour thereafter to resume their deliberation, and thereafter did return a verdict in favor of the defendant in said case. Movant shows that at said time that his sole attorney representing him in said matter was not present in said court room, and had no knowledge that said jury was permitted to so disperse; however, movant shows that he was present in the court room at said time but on account of his lack of knowledge of such affairs he did not understand what was taking place or happening and that he made no objections thereto, and did not report the same to his counsel until after a verdict had been rendered in said cause. In this connection, movant shows that when said jurors were permitted to so disperse that each and every one came in contact with the outside public, and was not kept together as contemplated by law until a verdict was rendered by them. Movant shows that on account of said facts that the same was prejudicial to him and that said verdict was returned in said cause after said jury was so permitted to disperse as set forth above, and for said reason that the same was void and had no binding effect on movant."

After the taking of testimony, argument of counsel, charge of the court, and after a case has been submitted to the jury for determination, it is reversible error for the court to allow the jury to disperse before the return of the verdict, without consent, either express or implied, of the parties. See *Riggins* v. *Brown*, 12 *Ga.* 271 (10); *Adkins* v. *Williams*, 23 *Ga.* 222; *Stix* v. *Pump*, 37 *Ga.* 332; *Eberhart* v. *State*, 47 *Ga.* 598 (5); *Carter* v. *State*, 56 *Ga.* 467 (4); *Kirk* v. *State*, 73 *Ga.* 620 (3); *Barfield* v. *Millino*, 107 *Ga.* 730 (33 S. E. 647); *Strickland* v. *State*, 16 *Ga. App.* 234 (85 S. E. 83). In *Singleton* v. *State*, 30 *Ga. App.* 250 (117 S. E. 670), this court quoted from *Josey* v. *State*, 148 *Ga.* 468 (1) (96 S. E. 1041), as follows: "In order for the misconduct of a juror during the trial of a criminal case in which he is engaged to be cause for a new trial, it must affirmatively appear that the accused and his counsel did not know of the misconduct until after the verdict." In the instant case no misconduct of a juror is involved. Error is assigned because the court allowed the jury to disperse after the case had been submitted to them. But it must also appear that the party and his counsel were not aware, before verdict, of the jury's dispersal. It appears that counsel was not present but it does appear that the plaintiff was present and made no objection. The plaintiff being present, under his own admission, and having impliedly assented that the jury might be dispersed, we think this is just as binding on the plaintiff as if his counsel had assented. Particularly is this true when no misconduct on the part of any of the jurors is shown. Courts, generally, do not approve the practice of permitting a jury to disperse before verdict, after a case has been submitted for determination, without the consent of the parties. However, in the instant case the party admits he knew what was happening, but seeks to excuse himself from making objection or informing his attorney on the ground that because of his lack of knowledge he did not know of the significance of what was taking place. In view of the fact that plaintiff was present, and in view of the fact that the rule seems to be, in a civil case at least, that the party is bound to take notice of what happens in the trial of his case in his own presence, as well as things which happen in the presence of his attorney, either or both, we feel compelled to hold, under all the facts involved, that there is no reversible error set forth in this ground.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

ON MOTION FOR REHEARING.

Under the record of this case, the principle stated in the Code, § 81-307, and *Glisson* v. *Burkhalter,* 31 *Ga. App.* 365 (120 S. E. 664), and *City of Atlanta* v. *Gore,* 47 *Ga. App.* 70, 74 (169 S. E. 776), do not apply, because the plaintiff declared on the two written contracts which are ambiguous on their faces, when construed together. The answer is sufficiently full, in view of the allegations of the petition, to admit proof of this issue, without the aid of a special plea of satisfaction or avoidance.

*Rehearing denied. Broyles, C. J., and MacIntyre, J., concur.*